UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

UNITED STATES OF AMERICA,                       06 Cr. 718 (CM)

        -against-

HURGENES PIGNARD,

        Defendant.

------------------------------------x


MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S PRE-TRIAL MOTIONS


        THEODORE S. GREEN
        *Attorney for Defendant*
        GREEN & WILLSTATTER
        200 Mamaroneck Avenue - Suite 403
        White Plains, New York  10601
        (914) 948-5656


TO:  JOHN P. COLLINS, JR., ESQ.
     Assistant U.S. Attorney
     300 Quarropas Street
     White Plains, New York  10601
     (914) 993-1936

PDF created with pdfFactory trial version www.pdffactory.com

This memorandum is submitted in support of the pre-trial of motions of Hurgenes Pignard a) to controvert the search warrant and suppress evidence seized from his apartment on the ground that the supporting allegations failed to establish probable cause to search his home for evidence of drug dealing; b) to suppress evidence seized from his apartment, the seizure of which was outside the scope of and not authorized by the search warrant; and c) to direct the government to furnish certain *Brady* information and particulars.

STATEMENT OF FACTS

On August 24, 2006, law enforcement officers arrested Hurgenes Pignard at his home, 60 Route 9W, Apartment B2, Piermont, New York, pursuant to a Federal arrest warrant, that was executed by the FBI, assisted by the Orangetown Police Department and the Piermont Police Department.

After Mr. Pignard was arrested, Piermont Police Detective Brian Holihan applied to the Village of Piermont Justice Court for a warrant to search the apartment.[1]

Holihan sought permission to search for cocaine, United

---

[1] Pignard has submitted a sworn declaration with this motion averring that he resided in Apartment B2, thereby establishing his standing to contest the warrant and the search directed at those premises.

1

PDF created with pdfFactory trial version www.pdffactory.com

States currency and financial records representing proceeds of drug trafficking, drug records, financial records, drug paraphernalia and documents evidencing residency at the premises (warrant application, ¶10).

In support of this request, Holihan alleged that on the morning of Pignard's arrest, he and Piermont police officer John Dowd – along with members of an FBI Swat Team – were positioned outside Pignard's apartment, watching the east side of the building. According to Holihan's affidavit:

> While the arrest warrant was being executed, I observed Hurgens [sic] Pignard punch a hole through a closed screen of a second floor bedroom window in apartment B2, from the inside. I observed an item fall from this second floor bedroom window. I observed Officer John Dowd recover the item that was thrown to the ground by Hurgens Pignard, and I packaged the item in an evidence bag. I then observed Officer John Dowd take custody of this item, and give the item to Police Officer Ken Marren of the Piermont Police Department. I was informed by Officer Marren that he then conducted a NIK field test on the recovered item, at the Piermont Police Department. Officer Marren then informed me that the recovered item tested positive for cocaine. I was informed the cocaine was then placed into evidence at the Piermont Police Department. (warrant application, ¶5).

Holihan alleges further that, "[o]nce the area of apartment B2 was secure" he and other officers entered the apartment and "secured" it "as a crime scene." Inside, he

2

PDF created with pdfFactory trial version www.pdffactory.com

observed two other occupants of the apartment, the defendant's wife Sonia Pignard and a relative, Edward Castro.  Holihan alleges that, while in the apartment, he observed "zip lock baggies" and CD discs and notebooks.  However, he does not make clear in his affidavit where he found the "zip lock baggies." (warrant application, ¶6).

However, after obtaining the warrant and conducting a search, Holihan prepared an inventory of items seized.  The only reference in the inventory that could refer to the prior observation of "zip lock baggies" is in item 7 of the inventory, which describes "1 RED PURSE CONTAINING NUMEROUS SMALL PLASTIC BAGS" found in the "MASTER BEDROOM HANGING ON OUTSIDE OF CLOSET DOOR" and recovered by Officer Dowd (inventory, p. 1).

Holihan's search warrant application also alleges that Pignard had a prior conviction for criminal possession of a controlled substance in the fourth degree from 2003 for which Pignard had been sentenced to five years' probation.  At that time, Holihan alleged, Pignard was arrested with more than 1/8 ounce of cocaine and a search at that time of his home revealed a scale and packaging materials in Pignard's bedroom. According to Holihan, Pignard at that time made admissions to

3

PDF created with pdfFactory trial version www.pdffactory.com

police that he had dealt cocaine (warrant application, ¶8).

Piermont Justice Court Judge Laura Weiss signed the warrant, directing it to any police officer with the Piermont, Orangetown or Clarkstown police departments or the Rockland County Sheriff's Department. The items authorized to be seized were those relating to drugs or drug-dealing as limited by Holihan's application (warrant, pp. 1-2).

As noted, after executing the warrant, Detective Holihan prepared an inventory. Among the items seized were a number of objects not authorized by the warrant including:

- a "black neoprene mask" which was alleged to have been found "rolled up in an air mattress, in plastic bag";

- a pair of tan shorts;

- a pair of latex gloves found in a second-floor hallway closet;

- a "hospital scrub shirt" and a "hospital mask" found in a master bedroom closet;

- a NYPD baseball hat found in a living room closet;

- various items of jewelry;

- a "'Scarface' picture'".

PDF created with pdfFactory trial version www.pdffactory.com

ARGUMENT

POINT I

THE INFORMATION ALLEGED IN THE WARRANT APPLICATION FAILED TO ESTABLISH PROBABLE CAUSE AND WAS BASED IN PART ON UNLAWFULLY-OBTAINED INFORMATION AND MISLEADING ALLEGATIONS IN THE WARRANT APPLICATION; ALTERNATIVELY, A HEARING IS REQUIRED, INCLUDING A HEARING PURSUANT TO *FRANKS v. DELAWARE*

In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court set forth a "totality of the circumstances" test for determining probable cause to support a search warrant. The issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. at 238. The quanta of proof necessary to establish probable cause is "only the probability, and not a prima facie showing, of criminal activity . . . ." Id. at 235.

A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists and its determination should be limited to whether the

5

PDF created with pdfFactory trial version www.pdffactory.com

issuing judicial officer had a substantial basis for the finding of probable cause. *United States v. Wagner*, 989 F.2d 69, 71-72 (2d Cir. 1993).

Moreover, the "good faith exception" to an otherwise invalid warrant does not apply where the police act outside the warrant's scope. *See United States v. Leon, supra*, 468 U.S. at 897, 918, n. 19 (Good faith exception "assumes, of course, that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant.").

Further, under *Leon*, "[s]uppression remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154 (1978)", *Leon*, *supra*, at 923. Where a warrant fails to set forth probable cause, moreover, "[e]vidence seized in good faith pursuant to a defective warrant may be suppressed [] (2) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; . . . [or] (4) where, depending on the circumstances of the particular case, a

6

PDF created with pdfFactory trial version www.pdffactory.com

warrant [is] . . . so facially deficient . . . that the executing officers cannot reasonably presume it to be valid'." *United States v. Fruchter*, 104 S.Fupp. 289, 307 (SDNY 2000); *United States v. Leon*, 468 U.S. 897, 922-23 (1984).

In the present case, Detective Holihan's warrant application fails to establish probable cause to believe that there was evidence of drug-dealing in the defendant's apartment. Holihan's affidavit refers to Pignard dropping an "item" from a second-floor window which later tested positive in a field test for cocaine. However, Holihan omits to give any description of this "item" that would enable a neutral and detached magistrate to discern whether it was consistent with drug dealing, as opposed to possession of a small quantity of cocaine for personal use. The distinction is critical, however, because "a small amount of drugs, without more, is insufficient to show that the defendant intended to distribute drugs[.]" *United States v .Gamble*, 388 U.S. 74, 77 (2d Cir. 2004).

Further, the remaining allegations in the warrant fail to provide the additional information that would raise the level of suspicion to probable cause. Holihan's allegation that he discovered zip-lock baggies in the apartment is inadequate

7

PDF created with pdfFactory trial version www.pdffactory.com

inasmuch as such bags are common household items and his affidavit offers no information as to the location, size or quantity of such baggies that would enable the magistrate to judge whether they supported an inference that they were possessed for the purpose of packaging drugs. (And, as we note below, from our review of the post-search warrant inventory, the initial observation of the baggies appears to have been made by unlawfully opening a woman's purse in the home before a warrant was obtained, a fact not disclosed to the magistrate). Further, the allegation that Pignard had, some three years earlier, been prosecuted and convicted for a completely separate drug possession felony (even if one accepts as true that he admitted to having sold drugs in the past) is too remote, attenuated, irrelevant and speculative to support an inference of drug-selling in this case.

The warrant application is based in part on information obtained as the result of Detective Holihan's unlawful warrantless entry into the apartment – after Pignard had been arrested – for what he contends was the purpose of securing the premises as a crime scene. The United States Supreme Court has permitted a limited exception to the warrant requirement where, incident to the arrest of a person in his home, police

8

PDF created with pdfFactory trial version www.pdffactory.com

conduct a "protective sweep" of the premises. *Maryland v. Buie*, 494 U.S. 325, 334 (1990). Thus, "[w]hen police officers have lawfully entered premises to effect an arrest, they are entitled to make a quick and limited pass through the premises to check for third persons who may destroy evidence or pose a threat to the officers." *United States v. Vasquez*, 638 F.2d 507, 530 (2d Cir. 1980). During such a security check, the officers are entitled to seize items in plain view. *United States v. Gomez*, 633 F.2d 999, 1008 (2d Cir. 1980), *cert. denied*, 450 U.S. 994 (1981). Once having secured the area, the officers would require a warrant to make a more thorough search. *United States v. Nezaj*, 666 F. Supp. 494, 501 (SDNY 1987).

Here, Detective Holihan's warrant affidavit does not even attempt to justify his warrantless, post-arrest entry as a security sweep. Rather, Holihan alleges that, after the "area of apartment B2 was secure" he and three other officers entered the premises to "secure" it as a "crime scene." At that time, the only persons he claims to have observed in the apartment were the defendant's wife and a relative. Presumably, Pignard had already been taken into custody and removed from the scene. Accordingly, Holihan did not have a justification for

9

PDF created with pdfFactory trial version www.pdffactory.com

conducting a security sweep or a warrantless search incident to Pignard's already-effectuated arrest.

Moreover, Holihan alleges in his affidavit that "[i]n the apartment I observed zip lock baggies, commonly used to package and distribute narcotics and marihuana, on the second floor or apartment B2". Yet, the post-warrant inventory that Holihan prepared only describes plastic bags as having been recovered from a woman's purse in the master bedroom. Even during a "protective sweep" – which this was not – police are limited to seizing items in plain view. Accordingly, if Holihan observed the baggies by opening a woman's purse, he should have disclosed that information in the warrant application as it bore directly on whether the observations upon which the magistrate premised the warrant were made from the officer's lawfully-obtained vantage point. If the baggies were discovered after Holihan unlawfully entered the apartment to "secure" it as a crime scene and then unlawfully opened a woman's purse, the observation of the baggies should have been disregarded entirely in the probable-cause equation.

Holihan's omission of this important information amounts, we contend, to a violation of his obligation not to mislead the magistrate, as required by *Franks v. Delaware*, *supra*. At a

10

PDF created with pdfFactory trial version www.pdffactory.com

minimum, there ought to be a hearing on this issue.

Further, his material omissions also serve to defeat any claim of good-faith reliance on the magistrate's issuance of the warrant. The warrant application does not appear to have been drafted in good faith because it is characterized by the studied exclusion of crucial facts that would have enabled the magistrate to intelligently decide whether probable cause in fact existed: the officer used the deliberately vague term "item" to describe the controlled substance that fell from the window, perhaps because a more particularized description would have suggested that it was a small quantity not indicative of drug-selling activity; the manner in which the plastic bags were discovered was not revealed to the magistrate, nor were the plastic bags described with particularity, so that the magistrate could not determine whether those observations should be severed out of the equation as having been obtained unlawfully, nor could the magistrate determine whether the bags were indicative of criminal activity.

The good-faith exception also does not apply because, as noted in Point II, the police, during execution of the warrant, exceeded its scope by seizing items that were not authorized by the warrant.

11

PDF created with pdfFactory trial version www.pdffactory.com

Accordingly, all evidence seized pursuant to this warrant should be suppressed – as should any items seized during the entry for the ostensible purposes of securing the "crime scene".

POINT II

POLICE EXCEEDED THE SCOPE OF THE WARRANT

As noted, a number of items seized were not authorized by the warrant, which was limited to drugs, paraphernalia, currency, financial records, drug records and documents evidencing residency in the apartment.  The unauthorized items included:

- a "black neoprene mask" which was alleged to have been found "rolled up in an air mattress, in plastic bag";

- a pair of tan shorts;

- a pair of latex gloves found in a second-floor hallway closet;

- a "hospital scrub shirt" and a "hospital mask" found in a master bedroom closet;

- a NYPD baseball hat found in a living room closet;

- various items of jewelry;

- a "'Scarface' picture'

12

PDF created with pdfFactory trial version www.pdffactory.com

When police are lawfully at premises executing a warrant they may seize items that are not within the warrant's scope provided that the incriminating character of the items is "'immediately apparent'". *Horton v. California*, 496 U.S. 128, 136-137 (1990), *quoting Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971); *United States v. George*, 975 F.2d 72 (2d Cir. 1992). Here, the items seized outside the scope of the warrant do not have an immediately-apparent incriminating character and, accordingly, they should be suppressed.

POINT III

THE GOVERNMENT SHOULD BE DIRECTED TO FURNISH CERTAIN *BRADY* INFORMATION AND PARTICULARS

Bill of Particulars

A defendant has a constitutional right "to be informed of the nature and cause of the accusation." U.S. Const. Amend. VI. The Sixth Amendment requires that the indictment state the elements of the offense and be sufficiently detailed to avoid double jeopardy. *United States v. Jaswal*, 47 F. 539, 542 (2d Cir. 1995)(defendants were free to demand a bill of particulars specifying the date of the charged offenses); *see Russell v.*

13

PDF created with pdfFactory trial version www.pdffactory.com

*United States*, 369 U.S. 749, 763-65, 770, 82 S.Ct. 1038, 1046-47, 1050 (1962). A defendant's concerns regarding notice of the charge and protection against double jeopardy "may be further promoted by a bill of particulars or pre-trial discovery." *United States v. Stravroulakis*, 952 F.2d 686, 693 (2d Cir. 1992).

A bill of particulars should be granted where necessary: (1) to inform the accused of the charges against him with sufficient precision to enable him to prepare his defense and avoid surprise, and (2) to enable him to plead his acquittal or conviction in bar of any further prosecution for the same offense. *See United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988); *United States v. Ford*, 2003 U.S. Dist. LEXIS 2629 *36 (N.D.N.Y. February 21, 2003)(ordering the Government to identify the alleged false entry and the alleged disbursement journal); *United States v. Avellino*, 129 F. Supp. 2d 214, 220-23 (E.D.N.Y. 2001)(ordering the Government to give a general description of the conduct involved, the approximate date of such conduct, and the nature of the falsehoods involved as to each tax return, e.g., underreported income, false deductions); *See United States v. Torres*, 901 F.2d 201, 234 (2d Cir. 1990)(the purpose a bill of particulars is to provide the

14

PDF created with pdfFactory trial version www.pdffactory.com

defendant with information about the details of the charge against him if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at the trial); *see also United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004)(bill of particulars is required where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused and is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means).

The question whether to grant an application, pursuant to Fed.R. Crim. P. 7(f), for a bill of particulars rests in the sound discretion of the trial court. *United States v. Sattar*, 314 F. Supp. 279, 318 (S.D.N.Y. 2004)(Koeltl, J.)

A number of published decisions in this circuit granting bills of particulars demonstrates that judges have found a variety of circumstances in which they are necessary. *See United States v. Stern*, 2003 U.S. Dist. LEXIS 20936 (S.D.N.Y. November 20, 2003)(requiring government to identify the wrongful act defendant was allegedly attempting to conceal); *United States v. Avendano*, 2003 U.S. Dist. LEXIS 19228 *24 (S.D.N.Y. October 30, 2003)(ordering the government to identify an unindicted co-conspirator); *United States v. Jackson*, 2003

15

U.S. Dist. LEXIS 13373 *7-8 (S.D.N.Y. August 4, 2003)(same); *United States v. Allen*, 289 F. Supp. 2d 230, 237 (N.D.N.Y. 2003); *United States v. Ganim*, 2002 U.S. Dist. LEXIS 22387 (D. Conn. November 20, 2002)(requiring government to identify specific benefits allegedly provided, the person who provided them and the date they were provided and linking those identifications with the alleged racketeering acts); *United States v. Zandstra*, 2000 U.S. Dist. LEXIS 13734 at *17 (S.D.N.Y. September 22, 2000)(Sweet. J.)(defendant entitled to the approximate dates of the allegedly fraudulent mailings, and the names of the alleged victims, if known); *United States v. Reale*, 1997 WL 580778, at *13-*14 (defendant accused of mail fraud entitled to bill of particulars identifying specific mailings and approximate dates).

In exercising its discretion whether to grant a bill of particulars, the Court must evaluate the charges contained in the indictment and the state of discovery. *United States v. Dames*, 2005 U.S. Dist. LEXIS 15705 (SDNY August 2, 2005).

In the present case, the defense is seeking information by bill of particulars which includes the identities of his alleged co-conspirators and a description of the role each had in the charged offenses, the address where the overt act

16

PDF created with pdfFactory trial version www.pdffactory.com

alleged to have taken place on April 20, 2005, took place (the indictment describes it as Divine Corners Road without further information), and particulars on any statements alleged to have been uttered by defendant in the course of the charged crimes. This information is not simply helpful to the defense but necessary to enabling the defendant to understand what criminal conduct he is alleged to have committed.

### *Brady* information

The government has provided us with a *Brady* disclosure, indicating that a participant in one of the charged crimes was unable to identify defendant from a photo array.  In order to understand and evaluate the import of this disclosure, the government should be directed to disclose further information about this identification, including what role this participant had, what opportunities this person had to observe and identify other participants and what descriptions this person provided as to other participants.

PDF created with pdfFactory trial version www.pdffactory.com

CONCLUSION

FOR THE REASONS SET FORTH HEREIN, THE RELIEF SOUGHT IN DEFENDANT'S NOTICE OF MOTION SHOULD BE GRANTED

Dated:   White Plains, New York
         November 16, 2006

                              Yours, etc.,

                              s/ Theodore S. Green
                              _____
                              THEODORE S. GREEN    TG 1884
                              *Attorney for Defendant*
                              GREEN & WILLSTATTER
                              200 Mamaroneck Ave., Suite 403
                              White Plains, New York 10601
                              (914) 948-5656

TO:  JOHN P. COLLINS, JR. ESQ.
     Assistant U.S. Attorney
     300 Quarropas Street
     White Plains, New York   10601

18

PDF created with pdfFactory trial version www.pdffactory.com