UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x
                                       :
UNITED STATES OF AMERICA               :
                                       :
          -v-                          :
                                       :
HURGENES PIGNARD,                      :    S1 06 Cr. 718 (CM)
     a/k/a "Hurgens Pignard",          :
     a/k/a "Pop",                      :
     a/k/a "Pops",                     :
                                       :
                    Defendant.         :
                                       :
- - - - - - - - - - - - - - - - - - - x


GOVERNMENT'S PROPOSED REQUESTS TO CHARGE


                         MICHAEL J. GARCIA
                         United States Attorney for the
                         Southern District of New York,
                         Attorney for the United States
                              of America


JOHN P. COLLINS, JR.
CYNTHIA KEEFFE DUNNE
Assistant United States Attorneys
      - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - x
                                      :
UNITED STATES OF AMERICA              :
                                      :
          -v-                         :
                                      :
HURGENES PIGNARD,                     :    S1 06 Cr. 718 (CM)
     a/k/a "Hurgens Pignard",         :
     a/k/a "Pop",                     :
     a/k/a "Pops",                    :
                                      :
                    Defendant.        :
                                      :
- - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S PROPOSED REQUESTS TO CHARGE

        Pursuant to Rule 30 of the Federal Rules of Criminal
Procedure, the Government respectfully requests that the Court
include the following in its instructions to the Jury.

## TABLE OF CONTENTS

PAGE

1.  General Requests. . . . . . . . . . . . . . . . . . . . .  1

2.  The Indictment. . . . . . . . . . . . . . . . . . . . . .  2

3.  Summary of the Indictment . . . . . . . . . . . . . . . .  3

4.  Multiple Counts . . . . . . . . . . . . . . . . . . . . .  5

5.  Count One: General Instructions (18 U.S.C. § 371) . . . .  6

6.  Count One: Conspiracy -- Elements of Conspiracy . . . . .  8

7.  Count One: First Element
    Existence of the Conspiracy . . . . . . . . . . . . . . . 10

8.  Count One: Second Element
    Membership in the Conspiracy  . . . . . . . . . . . . . . 18

9.  Count One: Third Element -- Overt Acts  . . . . . . . . . 23

10. Count One: Conspiracy -- Time of Conspiracy . . . . . . . 26

11. Count One: Knowledge and Intent
    Conscious Avoidance . . . . . . . . . . . . . . . . . . . 27

12. Count One: Liability for Acts and Statements of
    Co-conspirators . . . . . . . . . . . . . . . . . . . . . 30

13. Counts Two and Three: Attempted Bank Robbery and
    Attempted Armed Bank Robbery
    The Statute (18 U.S.C. § 2113(a) and (d). . . . . . . . . 31

14. Attempted Bank Robbery: Elements of the Offense . . . . . 33

15. Attempted Bank Robbery: First Element
    A Federally Insured Bank  . . . . . . . . . . . . . . . . 35

16. Attempted Bank Robbery: Second and Third Elements
    Taking Money From the Custody of the Bank . . . . . . . . 36

17. Attempted Bank Robbery: Fourth Element
    Taking by Force and Violence or by Intimidation . . . . . 38

18.  Attempted Bank Robbery: Fifth Element
     Unlawfully, Willfully, and Knowingly  . . . . . . . . . 41

19.  Attempted Armed Bank Robbery: Element
     Putting Life in Jeopardy  . . . . . . . . . . . . . . . 42

20.  Attempted Bank Robbery: The Meaning of Attempt  . . . . . 44

21.  Attempted Bank Robbery: Aiding And Abetting . . . . . . . 46

22.  Count Four: Firearm Violation . . . . . . . . . . . . . . 50

23.  Count Four: Using Or Carrying A
     Firearm During Certain Crimes -- The Elements . . . . . . 51

24.  Count Four:
     First Element -- Use Or Carrying Or Possessing. . . . . . 52

25.  Count Four:
     Second Element -- Knowledge . . . . . . . . . . . . . . . 56

26.  Count Four:
     Third Element -- During And In Relation
     To Or In Furtherance Of A Certain Crime . . . . . . . . . 57

27.  Using or Carrying A Firearm: Aiding and Abetting  . . . . 58

28.  Guilt of Substantive Offense -- Pinkerton Liability . . . 59

29.  Venue:  . . . . . . . . . . . . . . . . . . . . . . . . . 62

30.  Defendant's Right Not to Testify  . . . . . . . . . . . . 64

31.  Admission of Defendant  . . . . . . . . . . . . . . . . . 65

32.  Character Testimony . . . . . . . . . . . . . . . . . . . 66

33.  Limiting Instruction -- Prior Act Evidence  . . . . . . . 67

34.  Preparation of Witnesses  . . . . . . . . . . . . . . . . 68

35.  Persons Not On Trial  . . . . . . . . . . . . . . . . . . 69

36.  Investigative Techniques  . . . . . . . . . . . . . . . . 70

37.  Uncalled Witnesses - Equally Available  . . . . . . . . . 71

38. Expert Testimony . . . . . . . . . . . . . . . . . . 72

39. Accomplice Testimony . . . . . . . . . . . . . . . . 74

40. Redaction of Evidentiary Items. . . . . . . . . . . 78

41. Direct And Circumstantial Evidence. . . . . . . . . 79

42. Variance In Dates . . . . . . . . . . . . . . . . . 82

43. Stipulations . . . . . . . . . . . . . . . . . . . 83

<u>REQUEST NO. 1.</u>

<u>General Requests</u>

The Government respectfully requests that the Court give its usual instructions to the jury on the following matters:

a.  Function of Court and Jury

b.  Indictment not Evidence

c.  Statements of Court and Counsel not Evidence

d.  Burden of Proof and Presumption of Innocence

e.  Reasonable Doubt

f.  Government Treated Like Any Other Party

g.  Definitions and Examples of Direct and Circumstantial Evidence

h.  Interest in Outcome

I.  Inferences

j.  Charts and Summaries

k.  Right to See Exhibits and Have Testimony Read During Deliberations

l.  Sympathy:  Oath as Jurors

m.  Punishment Is Not to Be Considered by the Jury

n.  Consider Each Count Separately

o.  Verdict of Guilt or Innocence Must be Unanimous

<u>REQUEST NO. 2.</u>

<u>The Indictment</u>

The defendant is formally charged in an Indictment. As I instructed you at the outset of this case, the Indictment is a charge or accusation. It is not evidence. The Indictment in this case contains four counts against HURGENES PIGNARD, the defendant. Before you begin your deliberations, you will be provided with a copy of the Indictment containing these charges. Therefore, I will not read the entire Indictment to you at this time. Rather, I will first summarize the offenses charged in the Indictment. Then I will explain in detail the elements of the offenses.

### REQUEST NO. 3.

#### Summary of the Indictment

Count One charges that from December 2004 through in or about May 2005, HURGENES PIGNARD, the defendant conspired to commit bank robbery, armed bank robbery and credit union robbery, and that overt acts in furtherance of the conspiracy took place in this district.

Count Two charges that on or about February 3, 2005, HURGENES PIGNARD, the defendant attempted to commit an armed bank robbery of the Charter One Bank in Spring Valley, New York, a federally insured bank, and that in committing this robbery a person was assaulted and that lives were put in danger by the use of a dangerous weapon. Count Two also charges that HURGENES PIGNARD, the defendant, aided and abetted others committing the attempted armed bank robbery.

Count Three charges that on or about April 20, 2005, HURGENES PIGNARD, the defendant attempted to commit a bank robbery of the First National bank of Jeffersonville in Loch Sheldrake, New York, a federally insured bank. Count Three also charges that HURGENES PIGNARD, the defendant, aided and abetted others committing the attempted bank robbery.

Count Four charges that on or about April 20, 2005, HURGENES PIGNARD, the defendant used, carried and possessed a Hi Point .40 caliber semi-automatic pistol in furtherance of the

3

attempted bank robbery of the First National Bank of Jeffersonville, and aided and abetted the possession of a firearm in furtherance of such crime.

REQUEST NO. 4

Multiple Counts

As I just indicated, the Indictment contains four counts against HURGENES PIGNARD. Each count constitutes a separate offense or crime.  You must consider each count of the Indictment separately, and you must return a separate verdict on each count in which the defendant is charged.

> Adapted from Sand, et al., Modern Federal
> Jury Instructions, Instr. 3-8 (1999); see
> United States v. Sanzo, 673 F.2d 64 (2d Cir.
> 1982).

REQUEST NO. 5

Count One –
General Instructions (18 U.S.C. § 371)

I will now turn to the language of Count One, the conspiracy charge.  Count One of the Indictment charges the defendant HURGENES PIGNARD with participating in a conspiracy to violate laws of the United States.  Count One charges, and I am reading now from the Indictment, that:

[The Court is respectfully requested to read
Count One of the Indictment up to Overt Acts]

The Indictment then lists the overt acts that are alleged to have been committed in furtherance of the conspiracy, as well as the particular statute alleged to have been violated.

As I said before, the defendant is charged with having been a member of a conspiracy to violate federal laws.

A conspiracy is a kind of criminal partnership -- a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy to violate a federal law, as charged in Count One, is an independent offense.  It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes."

Indeed, you may find the defendant guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime which was the object of the

6

conspiracy was not actually committed.  Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime, even if the conspiracy is not successful.

> Adapted from the charge of the Honorable Leonard B. Sand in <u>United States</u> v. <u>Rios</u>, 91 Cr. 914 (LBS) (S.D.N.Y. 1992).

> <u>See</u> <u>United States</u> v. <u>Labat</u>, 905 F.2d 18, 21 (2d Cir. 1990) ("Since the essence of conspiracy is the agreement and not the commission of the substantive offense that is its objective, the offense of conspiracy may be established even if the collaborators do not reach their goal.")

REQUEST NO. 6

Count One –
Conspiracy:  Elements of Conspiracy

In order to sustain its burden of proof with respect to the allegation of conspiracy, the Government must prove beyond a reasonable doubt the following three elements:

First, the existence of the conspiracy charged in Count One; that is, an agreement or understanding to violate the laws of the United States.

The first element then is:  Did the conspiracy alleged in the Indictment exist?  Was there such a conspiracy?

Second, the Government must prove beyond a reasonable doubt that the defendant knowingly became a member of the conspiracy; that is, that he knowingly associated himself and participated in the alleged conspiracy to violate the laws of the United States.

Third, the Government must prove that any one of the conspirators -- not necessarily the defendant, but any one of the parties involved in the conspiracy -- knowingly committed at least one overt act in furtherance of the conspiracy during the life of the conspiracy in the Southern District of New York.  The Southern District of New York encompasses all of Manhattan, the Bronx, Westchester County, Rockland County, Sullivan County, Putnam County, Orange County and Dutchess County so anything that

8

occurs in Manhattan, the Bronx, Westchester County, Rockland County, Sullivan County, Putnam County, Orange County and Dutchess County occurs in the Southern District of New York.

Now let us separately consider the three elements. First, the existence of the conspiracy; second, whether the defendant knowingly associated himself with and participated in the conspiracy; and third, whether an overt act was committed in furtherance of the conspiracy.

Adapted from the charge of the Honorable Leonard B. Sand in <u>United States</u> v. <u>Rios</u>, 91 Cr.. 914 (LBS) (S.D.N.Y. 1992).

REQUEST NO. 7

Count One:  First Element --
Existence of the Conspiracy

Starting with the first element, what is a conspiracy?
As I mentioned just a few minutes ago, a conspiracy is a
combination, an agreement, or an understanding of two or more
persons to accomplish by joint action a criminal or unlawful
purpose.   In this instance, the unlawful purposes that are
alleged to be the objects of the conspiracy were: (1) that the
defendant HURGENES PIGNARD and others known and unknown,
unlawfully, willfully and knowingly, by force and violence, and
by intimidation, would and did take, and attempt to take, from
the persons and presence of others, property and money belonging
to and in the care, custody, control, management, and possession
of various banks, the deposits of each of which were then insured
by the Federal Deposit Insurance Corporation, and a credit union,
the deposits of which were then insured by the National Credit
Union Administration Board, in violation of Title 18, United
States Code, Section 2113(a); and (2) that the defendant HURGENES
PIGNARD and others known and unknown, while committing and
attempting to commit bank robberies and a credit union robbery,
unlawfully, willfully and knowingly would and did assault persons
and put in jeopardy the lives of such persons by the use of a
dangerous weapon, namely, a pellet gun and a firearm, in

10

violation of Title 18, United States Code, Section 2113(d).

The gist, or the essence, of the crime of conspiracy is the unlawful combination or agreement between two or more persons to violate the law. As I mentioned earlier, the ultimate success of the conspiracy, or the actual commission of the crime that is the object of the conspiracy, is not required.

The conspiracy alleged here is therefore the <u>agreement</u> to violate the laws of the United States. It is an entirely distinct and separate offense from the <u>actual</u> violation of the laws of the United States.

In order for the Government to satisfy this element, you need not find that the alleged members of the conspiracy met together around a table and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished.

Your common sense will tell you that when men and women undertake to enter into a criminal conspiracy, much is left to unexpressed understanding. Conspirators do not usually reduce their agreements to writing or acknowledge them before a notary public, nor do they usually publicly broadcast their purpose or plans. From its very nature, a conspiracy is usually secret. Even if actions are taken in the open, the purpose behind those

11

actions is often known only to the conspirators.

Thus, it is sufficient if the Government proves beyond a reasonable doubt that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act. Express language or specific words are not required to indicate assent or attachment to a conspiracy.

Similarly, the Government need not prove that there was such an agreement as to each detail of the scheme or each act taken in furtherance of the scheme. It is sufficient if the Government proves beyond a reasonable doubt that there was an agreement to further at least one of the criminal objectives.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof. However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved. In determining whether there has been an unlawful agreement as alleged in the Indictment, you may judge the acts and conduct of the alleged members of the conspiracy which are done to carry out an apparent criminal purpose. The adage "actions speak louder than words" is applicable here. Usually, the only evidence available with respect to the existence of a conspiracy is that of disconnected acts on the part of the

12

alleged individual conspirators, which acts, when taken together
in connection with each other and with the reasonable inferences
that flow from such acts, show a conspiracy or agreement to
secure a criminal result.  When taken all together and considered
as a whole, however, that conduct may warrant the inference that
a conspiracy existed just as conclusively as would direct proof.

Thus, for example, an agreement among people may be
inferred from circumstantial evidence concerning the relationship
of the parties, their overt acts, and the totality of their
conduct.

As I mentioned to you before, if the elements of
conspiracy are established, it is immaterial whether the
conspirators successfully accomplished their purpose.  On the
other hand, proof that the objects of an alleged conspiracy were
accomplished may be the most persuasive evidence of the existence
of the conspiracy itself.  In other words, success of the
venture, if you believe it was successful, and how that success
was achieved, may be the best proof of the venture itself.

In considering this first element, you should consider
all the evidence that has been admitted with respect to the
conduct and statements of each alleged co-conspirator, and any
inferences that may reasonably be drawn from that conduct and
those statements. In sum, if, upon consideration of all the
evidence, direct or circumstantial, you find beyond a reasonable

13

doubt that at least two of the alleged conspirators agreed to work together in furtherance of the unlawful scheme alleged in the indictment, then the first element is established.

        The Objective of the Conspiracy

        The object of a conspiracy is the illegal goal the co-conspirators agree or hope to achieve.  Count One charges the defendant with conspiring to violate certain laws of the United States.  Specifically, the objects of the conspiracy charged in Count One of the Indictment are that: (1) that the defendant HURGENES PIGNARD and others known and unknown, unlawfully, willfully and knowingly, by force and violence, and by intimidation, would and did take, and attempt to take, from the persons and presence of others, property and money belonging to and in the care, custody, control, management, and possession of various banks, the deposits of each of which were then insured by the Federal Deposit Insurance Corporation, and a credit union, the deposits of which were then insured by the National Credit Union Administration Board, in violation of Title 18, United States Code, Section 2113(a); and (2) that the defendant HURGENES PIGNARD and others known and unknown, while committing and attempting to commit bank robberies and a credit union robbery, unlawfully, willfully and knowingly would and did assault persons and put in jeopardy the lives of such persons by the use of a dangerous weapon, namely, a pellet gun and a firearm, in

14

violation of Title 18, United States Code, Section 2113(d).

Later, when I explain Counts Two and Three of the Indictment, which charge HURGENES PIGNARD with the substantive crime of bank robbery and armed bank robbery in connection with the attempted robberies of the Charter One Bank and the First National Bank of Jeffersonville, I will explain the elements of the objects of the conspiracy charged in Count One.

You also heard testimony that on an earlier occasion, the defendant engaged in the robbery of an RIA Financial Services - a money transfer store in the Bronx that is not federally insured like a bank or a credit union.  Let me remind you that the defendant is only on trial for committing the acts alleged in the Indictment.  Accordingly, you may not consider this evidence of this crime as a substitute for proof that the defendant committed the crimes charged in the Indictment.  Nor may you consider this evidence as proof that a defendant has a criminal personality or bad character.  This evidence was admitted for a more limited purpose, and you may consider it for that purpose only.

Evidence of the RIA robbery was admitted to provide background to the crimes charged in the Indictment.  If you determine that the defendant committed the acts charged in the Indictment and the RIA robbery with other persons alleged to be members of the conspiracy, you may consider this act in deciding

15

whether the conspiracy existed and whether the defendant was a member of the conspiracy.  If you find that the defendant engaged in the RIA robbery, and if you find that the earlier act had sufficiently similar characteristics to those charged in the Indictment, then you may, but you need not, infer that the acts charged in this Indictment and the earlier conduct were part of a common plan or scheme committed by the defendant.

Nevertheless, the evidence of similar conduct is to be considered by you only on the issues I have just mentioned, and not on any other issues.  You may not consider such evidence for any other purpose.  Again, you may not consider it as evidence that the defendant you are considering is of bad character or has a propensity to commit crime.

Finally, if you conclude that the only object of the conspiracy was to rob RIA Financial Services and that it was not a goal or objective of the conspiracy to commit bank robbery or credit union robbery, or that the only overt acts that were taken by the defendant or others were those taken in furtherance of the RIA robbery, then you must acquit the defendant of the conspiracy charge.

> See United States v. Rea, 958 F.2d 1206, 1214 (2d Cir. 1992) ("In order to prove conspiracy, the government need not present evidence of an explicit agreement; proof of a tacit understanding will suffice.  The conspirators need not have agreed on the details of the conspiracy, so long as they have agreed on the essential nature of the plan, and their goals need not

be congruent, so long as they are not at cross-purposes.") (citations omitted); <u>United States</u> v. <u>Montour</u>, 944 F.2d 1019, 1025 (2d Cir. 1991) ("To prove the existence of an agreement, the government need not present evidence of a formal arrangement between the co-conspirators.  Rather, it is sufficient if the government can demonstrate that the defendant acted together with others to realize a common goal.") (citations omitted).  <u>See also</u> <u>United States</u> v. <u>Rubin</u>, 844 F.2d 979, 983-84 (2d Cir. 1988) (generally discussing proof of agreement). Adapted from Sand, <u>Modern Federal Jury Instructions</u>, Instr. 5-25, 5-26.

17

REQUEST NO. 8

Count One:   Second Element --
Membership in the Conspiracy

If you conclude that the Government has proven beyond a reasonable doubt that the conspiracy charged in Count One existed, you must next determine the second question, and that is whether the defendant, HURGENES PIGNARD, participated in the conspiracy with knowledge of its unlawful purpose and in furtherance of its unlawful objective.

The Government must prove beyond a reasonable doubt that the defendant knowingly and intentionally entered into the conspiracy, into the agreement, with a criminal intent -- that is, with a purpose to violate the law -- and that the defendant agreed to take part in the conspiracy to promote and cooperate in its unlawful objective.

"Unlawfully," "Wilfully " and "Knowingly" Defined

The terms "unlawfully" and "intentionally" and "knowingly" are intended to ensure that if you find that the defendant did join the conspiracy, you also conclude beyond a reasonable doubt that, in doing so, he knew what he was doing; in other words, that he took the actions in question deliberately and voluntarily.

An act is done "knowingly" and "intentionally" if it is done deliberately and purposely; that is, the defendant's acts

18

must have been the product of the defendant's conscious objective, rather than the product of a mistake or accident, or mere negligence, or some other innocent reason.

An act is done "wilfully" if it is done voluntarily, intentionally, and with a bad purpose; that is, a purpose to do something that the law forbids.

"Unlawfully" means simply contrary to law. The defendant need not have known that he was breaking any particular law or any particular rule. He need only have been aware of the generally unlawful nature of his acts.

Now, science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking. However, you do have before you the evidence of certain acts and conversations alleged to have taken place with the defendant or in his presence. The Government contends that these acts and conversations show, beyond a reasonable doubt, the defendant's knowledge of the unlawful purposes of the conspiracy.

The defendant denies that he was a member of a conspiracy. It is for you to determine whether the Government has established to your satisfaction and beyond a reasonable doubt that such knowledge and intent on the part of the defendant existed.

It is not necessary that a defendant be fully informed as to all the details of the conspiracy in order to justify an

19

inference of knowledge on his part.  To have guilty knowledge,
the defendant need not have known the full extent of the
conspiracy or all of its activities or all of its participants.
It is not even necessary that the defendant know every other
member of the conspiracy.  In fact, a defendant may know only one
other member of the conspiracy and still be a co-conspirator.
Nor is it necessary that a defendant receive any monetary benefit
from his participation in the conspiracy or have a financial
stake in the outcome so long as he in fact participated in the
conspiracy in the manner I have explained.

          The duration and extent of a defendant's participation
has no bearing on the issue of a defendant's guilt.  He need not
have joined the conspiracy at the outset.  He may have joined it
for any purpose at any time in its progress, and he will still be
held responsible for all that was done before he joined and all
that was done during the conspiracy's existence while he was a
member.  Each member of a conspiracy may perform separate and
distinct acts and may perform them at different times.  Some
conspirators play major roles, while others play minor roles in
the scheme.  An equal role is not what the law requires.  In
fact, even a single act may be sufficient to draw the defendant
within the ambit of the conspiracy.

          However, I want to caution you that the mere
association by one person with another does not make that person

20

a member of the conspiracy even when coupled with knowledge that a conspiracy is taking place. Mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place, is not sufficient to support a conviction.

In other words, knowledge without participation is not sufficient. What is necessary is that the defendant have participated in the conspiracy with knowledge of its unlawful purposes and with an intent to aid in the accomplishment of its unlawful objectives.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering an illegal undertaking. The defendant thereby becomes a knowing and willing participant in the unlawful agreement -- that is to say, a conspirator.

A conspiracy, once formed, is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by its members. So, too, once a person is found to be a member of a conspiracy, he is presumed to continue his membership in the venture until its termination, unless it is shown by some affirmative proof that he withdrew and disassociated himself from it.

> Adapted from the charge of the Honorable Leonard B. Sand in <u>United States</u> v. <u>Rios</u>, 91 Cr.. 914 (LBS) (S.D.N.Y. 1992), and from Sand, <u>Modern Federal Jury</u>

21

Instructions, Instr. 19-6.

See United States v. Rea, 958 F.2d 1206, 1214 (2d Cir. 1992) ("The defendant's knowledge of the conspiracy and participation in it with the requisite criminal intent may be established through circumstantial evidence.  A defendant need not have joined a conspiracy at its inception in order to incur liability for the unlawful acts of the conspiracy committed both before and after he or she became a member.") (citations omitted).  See also United States v. Miranda-Ortiz, 926 F.2d 172, 175-6 (2d Cir.) (generally discussing proof required to show membership in conspiracy), cert. denied, 112 S. Ct.  347 (1991); and United States v. Maldonado-Rivera, 922 F.2d 934, 960 (2d Cir. 1990) (same), cert. denied, 111 S. Ct. 2858 (1991).

22

REQUEST NO. 9

Count One:  Third Element --
Overt Acts

The third element is the requirement of an overt act.
To sustain its burden of proof, the Government must show beyond a
reasonable doubt that at least one overt act was committed in
furtherance of the conspiracy by at least one of the co-
conspirators in the Southern District of New York.

I instruct you as a matter of law that Manhattan, the
Bronx, Westchester County, Rockland County, Sullivan County,
Putnam County, Orange County and Dutchess County fall within the
geographic boundaries of the Southern District of New York.

The purpose of the overt act requirement is clear.
There must have been something more than mere agreement; some
overt step or action must have been taken by at least one of the
conspirators in furtherance of the conspiracy.

The overt acts are set forth in the indictment which
alleges:

> [The Court is respectfully requested to read
> the "OVERT ACTS" section of Count One of the
> Indictment.]

You may find that overt acts were committed which were
not alleged in the Indictment.  The only requirement is that one
of the members of the conspiracy has taken some step or action in
furtherance of the conspiracy in the Southern District of New

23

York during the life of the conspiracy.

Let me put it colloquially. The overt act element is a requirement that the agreement went beyond the mere talking stage, the mere agreement stage. The requirement of an overt act is a requirement that some action be taken during the life of the conspiracy by one of the co-conspirators to further the conspiracy.

In order for the Government to satisfy the overt act requirement, it is not necessary for the Government to prove all of the overt acts alleged in the Indictment. Nor must you find that the defendant in this case committed the overt acts alleged. It is sufficient for the Government to show that either the defendant or one of his alleged co-conspirators knowingly committed an overt act in furtherance of the conspiracy. Remember, the act of any one of the members of a conspiracy, done in furtherance of the conspiracy, becomes the act of all the other members. To be a member of the conspiracy, it is not necessary for a defendant to commit an overt act.

You should bear in mind that the overt act, standing alone, may be an innocent, lawful act. Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding, or assisting the conspiratorial scheme. You are therefore instructed that the overt act does not have to be an act which in and of itself is

24

criminal or constitutes an objective of the conspiracy.

You are further instructed that the overt act need not have been committed at precisely the time alleged in the Indictment.  It is sufficient if you are convinced beyond a reasonable doubt that it occurred at or about the time and place stated, as long as it occurred while the conspiracy was still in existence.

Adapted from the charge of the Honorable Leonard B. Sand in <u>United States</u> v. <u>Rios</u>, 91 Cr.. 914 (LBS) (S.D.N.Y. 1992).

25

REQUEST NO. 10

Count One –
Conspiracy:   Time Of Conspiracy

The Indictment charges that the conspiracy charged in Count One existed from in or about December 2004 through in or about May 2005.  It is not essential that the Government prove that the conspiracy started and ended on those specific dates. Indeed, it is sufficient if you find that in fact a conspiracy was formed and that it existed for some time within the period set forth in the Indictment, and that at least one overt act was committed in furtherance of the conspiracy within that period.

    Adapted from the charge of the Honorable John F. Keenan
    in United States v. Carrero, 91 Cr.. 365 (S.D.N.Y.
    1991).

26

REQUEST NO. 11

Count One --
Knowledge and Intent: Conscious Avoidance

I have just instructed you that the Government must
prove beyond a reasonable doubt, first, that the defendant
participated in the conspiracy, and second, that he did so with
knowledge of its unlawful purposes and in furtherance of its
unlawful objectives.  Let me say one other thing about the  .
knowledge element regarding the objectives or purposes of the
conspiracy.  In determining whether the defendant acted knowingly
and intentionally regarding the objectives or purposes of the
conspiracy, you may consider whether the defendant deliberately
closed his eyes to what otherwise would have been obvious.

I would like to point out that the necessary knowledge
on the part of the defendant regarding the object of the
conspiracy cannot be established by showing that he was careless,
negligent, or foolish.  However, one may not wilfully and
intentionally remain ignorant of a fact material and important to
one's conduct in order to escape the consequences of criminal
law.  Thus, if you find beyond a reasonable doubt that the
defendant was aware that there was a high probability that he and
his co-conspirators were conspiring to commit bank robbery, but
that the defendant deliberately and consciously avoided
confirming this fact, then you may treat this deliberate

27

avoidance of positive knowledge as the equivalent of knowledge,
unless you find that the defendant actually believed that he and
his co-conspirators were not planning on committing robbery.

I would also like to point out that this legal
principle regarding the "deliberate closing of eyes" has no
bearing on whether a conspiracy existed in the first place or
even whether the defendant became a member of the conspiracy.
Rather, if the Government proves beyond a reasonable doubt that
the conspiracy existed and that the defendant became a member of
the conspiracy, the Government may then prove that the defendant
acted with knowledge of the illegal objectives or purposes by
showing that he deliberately closed his eyes to what otherwise
would have been obvious.

> Adapted from the charge in United States v.
> Mang Sun Wong, 884 F.2d 1537, 1541-43 (2d
> Cir. 1989) (expressly approving charge),
> cert. denied, 493 U.S. 1082 (1990). See also
> United States v. Khan, 53 F.3d 507 (2d Cir.
> 1995); Sand, et al., Modern Federal Jury
> Instructions, Instr. 3A-2.
> "A conscious avoidance charge is appropriate
> when the defendant claims a lack of knowledge
> of the relevant acts [sic], but the
> surrounding circumstances would permit a
> reasonable juror to conclude that the
> defendant should have known about them."
> United States v. Brito, 907 F.2d 392, 396 (2d
> Cir. 1990). See United States v. Rodriguez,
> 983 F.2d 455, 457-58 (2d Cir. 1993)
> (clarifying when charge is appropriate:
> "[T]he charge is warranted only if the
> evidence is such that a rational juror may
> reach that conclusion beyond a reasonable
> doubt"). See also United States v. Lanza,

790 F.2d 1015, 1022 (2d Cir.) (same), <u>cert</u>.
<u>denied</u>, 479 U.S. 861 (1986); <u>United States</u> v.
<u>Guzman</u>, 754 F.2d 482, 489 (2d Cir. 1985)
(same), <u>cert</u>. <u>denied</u>, 474 U.S. 1054 (1986).

REQUEST NO. 12

Count One –
Liability for Acts and Statements of Co-conspirators

When people enter into a conspiracy to accomplish an unlawful end, they become agents or partners of one another in carrying out the conspiracy.  In determining the factual issues before you, you may consider against the defendant any acts or statements made by any of his co-conspirators, even though such acts or statements were not made in the presence of the defendant or were made without his knowledge.

See United States v. Mastropieri, 685 F.2d 776, 786-90 (2d Cir.) (specifically mandating that juries not be invited to reconsider the admissibility of co-conspirator hearsay), cert. denied, 459 U.S. 945 (1982).

REQUEST NO. 13

Counts Two and Three –
Attempted Bank Robbery and Attempted Armed Bank Robbery
The Statute (18 U.S.C. § 2113(a) and (d)

Count Two of the Indictment charges the defendant with
the substantive crime of attempted armed bank robbery and the
lesser included offense of attempted bank robbery. Count Three
charges the defendant with the substantive crime of attempted
bank robbery.

Specifically, Counts Two and Three both charge the
defendant with violating Title 18, United States Code, Section
2113(a). Counts Two and Three charge, and I am reading now from
the Indictment, that:

> [The Court is respectfully requested to read
> Counts Two and Three to the Jury.]
>
> Section 2113(a) provides, in relevant part, that:
>
> Whoever, by force and violence, or by
> intimidation, takes, or attempts to take,
> from the person or presence of another . . .
> any property or money or any other thing of
> value belonging to, or in the care, custody,
> control, management, or possession of . . .
> any bank . . .

is guilty of a federal crime.

Count Two also charges the defendant with violating
Title 18, United States Code, Section 2113(d). Section 2113(d)
has the additional element that in the course of the robbery the
defendant:

31

> . . . assaults any person, or puts in
> jeopardy the life of any person by the use of
> a dangerous weapon or device . . .

is guilty of a federal crime.

In addition, both Counts Two and Three charge a
violation of Title 18, United States Code, Section 2. Section 2
concerns the concept of aiding and abetting the commission of a
federal crime.  I will discuss the concept of aiding and abetting
with you later in the charge.

32

REQUEST NO. 14

Attempted Bank Robbery:   Elements of the Offense

To find the defendant guilty of attempted bank robbery under Counts Two and Three, you must find that the Government has proved, beyond a reasonable doubt, the following five elements:

First: With respect to the Count you are considering, that, on or about the date alleged in the Indictment, the bank was insured by the Federal Deposit Insurance Corporation;

Second: With respect to the Count you are considering, that the defendant, or an individual that the defendant aided and abetted, attempted to take money or any other thing of value from the bank, which money or thing of value belonged to or was in the care, custody, control, management or possession of that bank;

Third: With respect to the Count you are considering, that the defendant, or an individual that the defendant aided and abetted, attempted to take, money or any other thing of value from the person or in the presence of another;

Fourth: With respect to the Count you are considering, that the defendant, or an individual that the defendant aided and abetted, did accomplish this attempted taking, by force and vio- lence or by acting in an intimidating manner; and

Fifth: With respect to the Count you are considering, that in attempting the bank robbery, or in aiding and abetting the attempted bank robbery, the defendant acted unlawfully,

33

wilfully and knowingly.

Adapted from 2 L. Sand et al., <u>Modern Federal Jury Instructions</u> ¶ 53.02, from the charge of the Honorable John M. Walker in <u>United</u> <u>States</u> v. <u>Gideon Leaks</u>, S 89 Cr. 607 (JAW) (January 9, 1990), and from <u>United</u> <u>States</u> v. <u>McLaughlin</u>, 476 U.S. 16, 17-18 (1986).

REQUEST NO. 15

Attempted Bank Robbery:  First Element --
A Federally Insured Bank

The first element of attempted bank robbery, which the Government must prove beyond a reasonable doubt, is that the bank alleged in the Count you are considering was a bank within the meaning of the federal bank robbery statute on or about the date alleged in that count.  The law defines the term "bank" to include any bank whose deposits are insured by the Federal Deposit Insurance Corporation.

[If Applicable]

In this case, both sides have stipulated that the Charter One Bank, located at 253 North Main Street, Spring Valley, New York, and the First National Bank of Jeffersonville, located at 1278 Route 52, Loch Sheldrake, New York, are both banks, the deposits of which were insured by the Federal Deposit Insurance Corporation at all times relevant to this case.

Adapted from 2 L. Sand et al., Modern Federal Jury Instructions ¶ 53.01, at 53-9 and from the charge of the Honorable John M. Walker in United States v. Gideon Leaks, S 89 Cr. 607 (S.D.N.Y.), Tr. 752 (January 9, 1990).

35

REQUEST NO. 16

Attempted Bank Robbery:   Second and Third Elements --
Taking Money From the Custody of the Bank

The second and third elements of attempted bank robbery require little elaboration.  The Government must prove beyond a reasonable doubt that, with respect to the bank robbery, the defendant, or an individual that the defendant aided and abetted, attempted to take, money or any other thing of value which was in the care, custody, control, management or possession of, or was owned by, the bank alleged in the Count you are considering.

The words care, custody, control, management and possession express the idea that the bank named in the Count you are considering must have had control over or responsibility for money.  When bank employees control money through the performance of their jobs, the bank is in possession and control of that money.  Therefore, the money in the control of bank tellers or within the vault of a bank is property that is in the control of the bank.

Property is in the "care" of the bank if the bank has made a commitment to guarantee the security or safety of the property.

In addition, the Government must show beyond a reasonable doubt that, with respect to the bank named in the Count you are considering, the defendant, or an individual that

36

the defendant aided or abetted, attempted to take, money or any other thing of value from, or in the presence of, a bank teller or bank employee or any person with control over bank assets.

Adapted from 2 L. Sand et al., Modern Federal Jury Instructions ¶ 53.01, at 53-10.1 and from the charge of the Honorable John M. Walker in United States v. Gideon Leaks, S 89 Cr. 607 (S.D.N.Y.), Tr. 752-53 (January 9, 1990).

REQUEST NO. 17

### Attempted Bank Robbery:  Fourth Element --
### Taking by Force and Violence or by Intimidation

The fourth element requires proof beyond a reasonable doubt that the attempted taking, involved force or violence, or acting in an intimidating manner.  The Government can satisfy this element by proving beyond a reasonable doubt that the defendant, or an individual that the defendant aided or abetted, actually used force and violence in the attempted taking of money from the bank.  Force and violence have their every day meanings and require no further elaboration.

The Government can also satisfy this element by proving beyond a reasonable doubt that the attempted taking involved intimidation, that is, placing another person or persons in fear. In other words, the Government must prove either that force and violence were used or that there was intimidation; the Government need not prove both.  Intimidation may be established by proof of circumstances that are normally and reasonably calculated to arouse fear in ordinary human beings.  Therefore, to prove intimidation, the Government must prove that the defendant, or an individual that the defendant aided or abetted, said or did something during the course of the attempted robbery that would make an ordinary person fear bodily harm.  It is not necessary, however, for the Government to prove that each victim actually

38

was frightened in order to establish that the defendant, or an individual that the defendant aided or abetted, acted in an intimidating manner.

Evidence that an unusually timid victim was actually intimidated by the conduct of the defendant, or an individual that the defendant aided or abetted, is not, by itself, proof that the defendant, or an individual that the defendant aided or abetted, engaged in intimidating conduct. The Government must prove beyond a reasonable doubt that an ordinary person would have experienced fear of bodily harm because of what the defendant, or an individual that the defendant aided or abetted, said or did.

Your focus should be on the behavior of the defendant, or an individual that the defendant aided or abetted. Although the Government does not have to show that the behavior of the defendant, or an individual that the defendant aided or abetted, caused, or could have caused, terror, panic or hysteria, the Government does have to show that an ordinary person in the position of the bank employees, security guards or customers at the time of the robbery would have feared bodily harm because of what the defendant, or an individual that the defendant aided or abetted, did or said.

The question for your determination is an objective one: whether the Government has sustained its burden of showing

that the conduct of the defendant, or an individual that the

defendant aided and abetted, constituted force and violence or

provided an expectable basis for the creation of fear.

> Adapted from the charges of the Honorable John M.
> Walker in United States v. Gideon Leaks, S 89 Cr. 607
> (S.D.N.Y.), Tr. 753-54; and of the Leonard B. Sand in
> United States v. Odo Charles Wilkinson, 87 Cr. 777
> (S.D.N.Y.), Tr. 409, aff'd by memorandum, 88-1124 (2d
> Cir. November 4, 1988); and of the Honorable Marvin
> Frankel in United States v. D'Amico, 68 Cr. 277
> (S.D.N.Y.) Tr. 447-449, aff'd, 408 F.2d 331 (2d Cir.
> 1969).

REQUEST NO. 18

Attempted Bank Robbery:  Fifth Element--
Unlawfully, Willfully and Knowingly

As to the fifth element, the terms "unlawfully," "willfully" and "knowingly" mean that you must be satisfied beyond a reasonable doubt that the defendant knew what he was doing during the attempted robbery, or in aiding and abetting the attempted robbery, and did it deliberately and voluntarily. I have already defined these terms for you when I gave you the instructions for Count One of the Indictment.

Adapted from the charge of Judge Herlands in United States v. Garfield, 61 Cr. 671, 61 Cr. 694 (Tr. 26414-26418), affirmed sub nom. United States v. Dardi, 330 F.2d 315 (2d Cir.), cert. denied, 379 U.S. 845 (1964); United States v. Pomponio, 429 U.S. 10, 12 (1976); United States v. Winston, 558 F.2d 105, 107-09 (2d Cir. 1977); United States v. Dixon, 536 F.2d 1388, 1395-96 (2d Cir. 1976); United States v. Peltz, 433 F.2d 48, 54 (2d Cir. 1970).

41

REQUEST NO. 19

## Attempted Armed Bank Robbery: Element --
Putting Life in Jeopardy

Count Two of the Indictment alternatively charges the defendant with attempted armed bank robbery along with attempted bank robbery.

To find the defendant guilty of attempted armed bank robbery, you must find beyond a reasonable doubt that all of the elements of simple attempted bank robbery, as I have just described them, exist. Furthermore, you must find that the lives of one or more persons were placed in jeopardy by the use of a dangerous weapon or device, or that the defendant, or an individual that the defendant aided and abetted, assaulted another person with a dangerous weapon or device.

To put in jeopardy the life of a person means to expose such person to a risk of death by the use of a dangerous weapon or device, or by provoking a violent reaction from the person threatened or from a person observing the threat.  To assault another person is to threaten or attempt to inflict physical harm on that person by the immediate use of a dangerous weapon.

A dangerous weapon or device includes anything capable of being used to inflict serious bodily harm or injury upon another person.  In this regard, I instruct you that, under the law, a firearm and a pellet gun are both considered to be a

42

dangerous weapon whether or not loaded.

If you find that the defendant, or an individual that the defendant aided and abetted, assaulted or placed in jeopardy the lives of one or more persons by the use of a dangerous weapon or device, and you have found that the other elements of simple attempted bank robbery that I have defined for you have been proved beyond a reasonable doubt, then you should also find the defendant guilty of attempted armed bank robbery in Count Two. It is not necessary for you to find the defendant guilty of attempted armed bank robbery for you to find him guilty of the lesser included offense of simple attempted bank robbery.

In order to meet its burden of proof on armed bank robbery, the Government must prove either that the defendant, or an individual the defendant aided and abetted, assaulted another with a deadly weapon or that the defendant, or an individual the defendant aided and abetted, jeopardized the life of another with a deadly weapon. It need not prove both.

Adapted from United States v. McLaughlin, 476 U.S. 16, 17-18 (1986); and from the charge of the Honorable John M. Walker in United States v. Gideon Leaks, S 89 Cr.. 607 (S.D.N.Y.) (January 9, 1990), Tr. 756-58.

43

## REQUEST NO. 20

### Attempted Bank Robbery:   The Meaning of Attempt

The federal bank robbery statute prohibits bank robbery as well attempts to commit bank robbery.  An attempt to commit bank robbery is a federal crime even though the defendant did not actually complete the crime of bank robbery.

In order to prove the charge of attempting to commit bank robbery, it is necessary that the evidence established beyond a reasonable doubt that:

1) the defendant intended to commit the crime charged in the Count you are considering,

and

2) that the defendant willfully took some action that was a substantial step in an effort to bring about or accomplish the crime.

Mere intention to commit a specific crime does not amount to an attempt.  In order to convict the defendant of attempted bank robberies charged in Counts Two and Three, you must find beyond a reasonable doubt that he intended to commit the crime of bank robbery, and that he took some action which was a substantial step toward the commission of that crime.

In determining whether the defendant's actions amounted to a substantial step toward the commission of the crime, it is necessary to distinguish between mere preparation on the one

44

hand, and the actual doing of the criminal deed on the other.
Mere preparation, which may consist of merely planning the
offense, or of devising, obtaining or arranging a means for its
commission, is not an attempt, although some preparations may
amount to an attempt.  The substantial step element does not
require the government to prove that the defendant did everything
except the last act necessary to complete the crime.

   The acts of a person who intends to commit a crime will
constitute an attempt where the acts themselves indicate an
intent to willfully commit the crime, and the acts are a
substantial step in a course of conduct planned to culminate in
the commission of the crime.

     Adapted from Sand et al., Modern Federal Jury
     Instruction, Instrs. 10-1 and 10-3 (1999)
     (setting forth model instruction regarding
     attempt crimes in general), and the legal
     principles set forth in United States v.
     Gabriel, 125 F.23d 89, 103 (2d Cir. 1997)
     (Section 1512 prohibits successful and
     attempted witness tampering; thus "the
     government was required to prove only that
     [defendant] endeavored corruptly to persuade
     or mislead [witness] with the intent of
     influencing [witness'] potential testimony");
     see also United States v. Ivic, 700 F.2d 51,
     53 (2d Cir. 1983) (elements of attempt are
     intent to commit crime and substantial step
     in furtherance of crime); United States v.
     Mowad, 641 F.2d 1067, 1073 (2d Cir. 1981)
     (describing elements of crime of attempt).

45

REQUEST NO. 21

Attempted Bank Robbery:  Aiding And Abetting

I now want to instruct you on a concept that applies to Counts Two and Three -- the concept of aiding and abetting.  As I said, in Counts Two and Three, the defendant is charged not only with attempted bank robbery and attempted armed bank robbery in Count Two and attempted bank robbery in Count Three, but also with aiding and abetting the attempted bank robbery and attempted armed bank robbery in Count Two, and with aiding and abetting the attempted armed bank robbery.  Therefore, you may convict the defendant if he either (1) attempted to commit the crime charged in the Count you are considering himself or (2) aided and abetted the crime charged in the Count you are considering.  Please keep this in mind when you deliberate on Counts Two and Three.  Please also keep in mind the concept of aiding and abetting, which I will explain to you now.

In general, the guilt of a defendant in a criminal case may be established without proof that he personally did every act constituting the offense alleged.  The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by him through the direction of another person, his agent, or by acting in concert with or under the direction of another person or persons in a joint effort or enterprise.

The aiding and abetting statute, section 2(a) of Title

46

18 of the United States Code, provides that:

> Whoever commits an offense against the United
> States or aids, abets, counsels, commands,
> induces or procures its commission, is
> punishable as a principal.

In other words, it is not necessary for the Government
to show that the defendant himself physically committed a crime
in order for you to find him guilty.  If you do not find beyond a
reasonable doubt that the defendant attempted the robbery, the
government may, under certain circumstances, still satisfy its
burden of proof for aiding and abetting.

A person who aids and abets another to commit an
offense is just as guilty of that offense as if he had committed
it himself, or, in this case, had _attempted_ to commit the crime
himself.  You may find the defendant guilty of the substantive
crime, therefore, if you find, beyond a reasonable doubt, that
the Government has proven that another person actually attempted
the bank robbery or armed bank robbery, and that the defendant
aided and abetted that person in attempting the bank robbery or
armed bank robbery.

As you can see, the first requirement is that another
person has attempted to commit the bank robbery charged in the
Count you are considering.  Obviously, no one can be convicted of
aiding and abetting the criminal acts of another if there was no
criminal act.  But, if you do find that there was a criminal act,

the attempt to commit a bank robbery, then you must consider whether the defendant aided or abetted that attempt.

In order to aid or abet another to commit a crime, it is necessary that the defendant willfully and knowingly associates himself in some way with the crime, and that he willfully and knowingly seeks, by some act, to help make the crime succeed.

Participation in a crime is willful if action is taken voluntarily and intentionally or, in the case of a failure to act, with the specific intent to fail to do something the law requires to be done -- that is to say, with a bad purpose either to disobey or to disregard the law.

The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or the mere acquiescence by a defendant in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting. An aider and abettor must have some interest in the criminal venture.

To determine whether a defendant aided and abetted the commission of the crime with which he is charged, ask yourself these questions:

> -- Did he participate in the attempted bank robbery charged as something he wished to bring about?

> -- Did he associate himself with the criminal

48

venture knowingly and willfully?

-- Did he seek by his actions to make the criminal venture succeed?

If he did, then that defendant is an aider and abettor, and therefore guilty of the offense, the attempted bank robbery. If he did not, then the defendant is not an aider and abettor, and is not guilty of the attempted bank robbery.

> Adapted from charge given in United States v. Omar Portee, et al., S6 01 Cr. 450 (NRB), at 7190-93; charge of Judge Robert L. Carter in United States v. Ramirez, S17 98 Cr. 438 (RLC) (S.D.N.Y. 2000) and from Sand, Modern Federal Jury Instructions, Instrs. 11-1, 11-2, and from the charge approved in United States v. Stanchich, 550 F.2d 1294 (2d Cir. 1977). See United States v. Labat, 905 F.2d 18, 23 (2d Cir. 1990) (discussing requirements of aiding and abetting liability); United States v. Clemente, 640 F.2d 1069 (2d Cir.) (same), cert. denied, 454 U.S. 820 (1981).

REQUEST NO. 22

## Count Four:  Firearm Violation

Let me first start with Count Four.  In Count Four, the Government charges that, on or about April 20, 2005, HURGENES PIGNARD, with others known and unknown, unlawfully, willfully and knowingly, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, used and carried a firearm and, in furtherance of such crime, to wit, the attempted bank robbery charged in Count Three of this Indictment, possessed a firearm, to wit, a Hi Point .40 caliber semi-automatic pistol.

Count Four charges a violation of Section 924(c) of Title 18 of the United States Code, which provides as follows:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . [be guilty of a crime].

> Adapted from the charge of Judge Peter K. Leisure in United States v. Bradley, S 87 Cr. 1005 (PKL) (S.D.N.Y. 1988), aff'd sub nom. United States v. Meggett, 875 F.2d 24 (2d Cir.) (specifically approving charge), cert. denied, 493 U.S. 858 (1989), and from Sand, Modern Federal Jury Instructions, Instr. 35-76.

50

REQUEST NO. 23

Count Four:  Using Or Carrying A
Firearm During Certain Crimes -- The Elements

The elements of Count Four are as follows:

First, that, on or about April 20, 2005, HURGENES
PIGNARD used or carried or possessed a firearm (or any
combination of these acts);

Second, that HURGENES PIGNARD did so unlawfully,
willfully and knowingly; and

Third, that HURGENES PIGNARD used or carried the
firearm during and in relation to the commission of a crime of
violence for which the defendant might be prosecuted in a court
of the United States, or possessed the firearm in furtherance of
the same.

> Adapted from charge given in United States v.
> Omar Portee, et al., S6 01 Cr. 450 (NRB), at
> 7311-15; charge of Judge Peter K. Leisure in
> United States v. Bradley, S 87 Cr. 1005 (PKL)
> (S.D.N.Y. 1988), aff'd sub nom. United States
> v. Meggett, 875 F.2d 24 (2d Cir.)
> (specifically approving charge), cert.
> denied, 493 U.S. 858 (1989), and from Sand,
> Modern Federal Jury Instructions, Instr. 35-
> 78.

51

REQUEST NO. 24

Count Four:
First Element -- Use Or Carrying Or Possessing

The first element that the Government must prove beyond a reasonable doubt with respect to Count Four is that HURGENES PIGNARD used or carried or possessed a firearm.

Under the statute on which this charge is based, a firearm means "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive."  In considering this element, it does not matter whether the firearm was loaded or operable at the time of the crime.  Your common sense will tell you that a handgun is a firearm under this definition.

"Use"

"Use" of a firearm requires an "active employment" of the firearm by the person -- that is, a use that makes the firearm an operative factor in relation to the crime of violence. "Active employment" includes brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm.

"Carrying"

A person "carries" a firearm if he transports or conveys the weapon, or has possession of it in the sense that, at a given time, he had both the power and the intention to exercise

52

control over it.

"Possession"

The legal concept of possession may differ from the
everyday usage of the term, so let me explain it in some detail.
Actual possession is what most of us think of as possession --
that is, having physical custody or control of an object, as I
possess this pen.  If you find that a defendant had the firearm
on his person, therefore, you may find that he had possession of
it.  However, a person need not have actual, physical possession
-- that is, physical custody of an object -- in order to be in
legal possession of it.  If a person has the ability to exercise
substantial control over an object, even if he does not have the
object in his physical custody, and that person has the intent to
exercise such control, then he is in possession of that article.
This is called "constructive possession."

Control over an object may be demonstrated by the
existence of a working relationship between one person having the
power or ability to control the item and another person who has
actual physical custody.  The person having control "possesses"
the firearm, because he has an effective working relationship
with the person who has actual physical custody of the firearm,
and because he can direct the use of the firearm.  In addition,
an individual may have possession of an item that is not found on
his person, because that individual has a relationship to the

53

location where the item is maintained.  In this manner, for example, a businessperson may possess things that are scattered throughout a number of stores or offices or installations around the country.

More than one person can have control over the same firearm.  The law recognizes that possession may be sole or joint.  If one person alone has actual or constructive possession of a thing, possession is sole.  If more than one person has possession of it, as I have defined possession for you, then possession is joint.  That is what is meant by "possession."

Now, let me give you some examples of possession.  I have a pen in my hand.  There should be no doubt that I physically possess the pen.

Another example:  Let's say that I brought in some candy today and left it on a table in the main area of my chambers, near my law clerk's desk.  My law clerk knows that he can't eat all of the candy; he'd better leave some for me.  I do not physically possess the candy but I do have control over it.  My law clerk also has control over it.  I can be said to "possess" the candy jointly with my law clerk.

Another example:  suppose my father left me a watch when he died, and it is now sitting in a safety deposit box.  My wife and I are the only people who can get into that box.  Do we have possession of the watch?  Absolutely, we have possession of

54

it, even though it's in a safety deposit box.

"Possession" of a firearm "in furtherance" of a crime of violence requires that possession advance or move forward the crime.  The mere presence of a firearm is not enough.  Possession in furtherance requires that the possession be incident to and an essential part of the crime.  However, you do not need to find that the possession of a firearm actually caused a particular effect.

> Adapted from charge of Judge Leonard B. Sand in United States v. Rios, 91 Cr. 914 (S.D.N.Y. 1992), from the charge of Judge John M. Walker in United States v. Torres, 87 Cr. 593 (S.D.N.Y. 1988), aff'd, 901 F.2d 205 (2d Cir.), cert. denied, 498 U.S. 906 (1990), from United States v. Omar Portee, et al., S6 01 Cr. 450 (NRB), at 7315; charge of Judge Peter K. Leisure in United States v. Bradley, S 87 Cr. 1005 (PKL) (S.D.N.Y. 1988), aff'd sub nom. United States v. Meggett, 875 F.2d 24 (2d Cir.) (specifically approving charge), cert. denied, 493 U.S. 858 (1989), from the charge of Judge John M. Walker in United States v. Torres, 87 Cr. 593 (JMW) (S.D.N.Y. 1988), aff'd, 901 F.2d 205, 241 (2d Cir.) (same), cert. denied, 498 U.S. 906 (1990), from the charge of Judge Kenneth Conboy in United States v. Ruggiero, 92 Cr. 811 (KC) (S.D.N.Y. 1993), and from Sand, Modern Federal Jury Instructions, Instrs. 35-80, 56-5, 56-7, 56-12, 56-13.
>
> See United States v. Bailey, 516 U.S. 137 (1995).

REQUEST NO. 25

Count Four:  Second Element -- Knowledge

The second element the Government must prove beyond a reasonable doubt with respect to Count Four is that HURGENES PIGNARD acted "unlawfully, willfully, and knowingly."  I have already defined all of these terms for you in connection with earlier charges and you should apply those instructions here.

REQUEST NO. 26

Count Four:  Third Element --
During And In Relation To Or In Furtherance Of A Certain Crime

The third element that the Government must prove beyond a reasonable doubt with respect to Count Three is that HURGENES PIGNARD used or carried a firearm during and in relation to the commission of a crime of violence for which he might be prosecuted in a court of the United States, or possessed a firearm in furtherance of such a crime.

Thus, in order to convict HURGENES PIGNARD of Count Four, you must find that he committed the crime charged in Count Three.  In other words, that, on or about April 20, 2005, he attempted to commit a bank robbery, or aided and abetted an attempted bank robbery.  I have already described this crime for you.  Let me instruct you that the crime charged in Count Three -- attempted bank robbery -- is a crime of violence for which a person may be prosecuted in a court of the United States.

> Adapted from the charge of Judge Peter K.
> Leisure in United States v. Bradley, S 87 Cr.
> 1005 (PKL) (S.D.N.Y. 1988), aff'd sub nom.
> United States v. Meggett, 875 F.2d 24 (2d
> Cir.) (specifically approving charge), cert.
> denied, 493 U.S. 858 (1989), and from Sand,
> Modern Federal Jury Instructions, Instr. 35-
> 79.

REQUEST NO. 27

Using Or Carrying A Firearm:  Aiding And Abetting

You also heard me say that HURGENES PIGNARD is charged in Count Four with aiding and abetting the use or carrying or possession of a firearm in connection with a crime of violence that could be prosecuted in federal court.  I have already explained the concept of aiding and abetting in connection with earlier charges, and it means the same thing with respect to Count Four.  You should apply my previous instructions on that subject.

I do want, however, to give you an additional instruction that applies to aiding and abetting the use or carrying or possession of a firearm as charged in Count Four.  In order to convict a defendant of aiding and abetting another's use or carrying or possession of a firearm, it is not enough to find that the defendant performed an act to facilitate or encourage the commission of the underlying crime of violence with only the knowledge that a firearm would be used or carried or possessed in the commission of that crime.  Instead, you must find that the defendant performed some act that facilitated or encouraged the actual using or carrying or possession of the firearm in relation to the underlying crime.

See United States v. Medina, 32 F.3d 40, 45 (2d Cir. 1994).

58

REQUEST NO. 28

## Guilt Of Substantive Offense -- *Pinkerton* Liability

There is another method by which you may evaluate the possible guilt of a defendant for the substantive charges in Counts Two, Three, and Four of the Indictment, even if you do not find that the Government has satisfied its burden of proof with respect to each element of the substantive crime against that defendant.

If, in light of my instructions, you find, beyond a reasonable doubt, that the defendant was a member of the conspiracy charged in Count One of the Indictment, then you may also, but are not required to, find him guilty of the corresponding substantive crime charged, provided that you find that each of the following elements has been proven beyond a reasonable doubt:

First, that the crime charged in the substantive count was committed;

Second, that the person or persons you find actually committed the crime were members of the conspiracy you found existed;

Third, that the substantive crime was committed pursuant to the common plan and understanding you found to exist among the conspirators;

Fourth, that the defendant was a member of the

59

conspiracy at the time the substantive crime was committed; and

Fifth, that the defendant could reasonably have foreseen that the substantive crime might be committed by his co-conspirators.

If you find all five of these elements to exist beyond a reasonable doubt, then you may find the defendant guilty of the substantive crime charged against him, even though he did not personally participate in the acts constituting the crime or did not have actual knowledge of it.

The reason for this rule is that a co-conspirator who commits a substantive crime pursuant to a conspiracy is deemed to be the agent of the other co-conspirators. Therefore, all of the co-conspirators bear criminal responsibility for the commission of the substantive crimes.

If, however, you are not satisfied as to the existence of any of these five elements, then you may not find the defendant guilty of the substantive crime, unless the Government proves, beyond a reasonable doubt, that the defendant personally committed, or aided and abetted the commission of, the substantive crime charged.

> Adapted from Sand, Modern Federal Jury
> Instructions, Instr. 19-13. A Pinkerton
> charge, see Pinkerton v. United States, 328
> U.S. 640, 645 (1946), "permits a jury to find
> a defendant guilty on a substantive count
> without specific evidence that he committed
> the act charged if it is clear that the

60

offense had been committed, that it had been committed in the furtherance of an unlawful conspiracy, and that the defendant was a member of that conspiracy." United States v. Miley, 513 F.2d 1191, 1208 (2d Cir.), cert. denied, 423 U.S. 842 (1975), quoted in United States v. Harwood, 998 F.2d 91, 100 (2d Cir.), cert. denied, 510 U.S. 971 (1993).

Whether to give a Pinkerton charge is in the discretion of the district court.  Although the charge "should not be given as a matter of course," United States v. Sperling, 506 F.2d 1323, 1341 (2d Cir. 1974), cert. denied, 420 U.S. 962 (1975), it is entirely proper where evidence of conspiracy is otherwise sufficient.  See United States v. Harwood, 998 F.2d at 100 (Pinkerton charge proper where evidence of conspiracy was sufficient, and where judge "properly instructed jury to consider the substantive count only after it first found that a conspiracy existed between the defendant").

REQUEST NO. 29

Venue

In addition to all of the elements I have described for you, you must also decide whether any act in furtherance of each of those crimes occurred within the Southern District of New York, which includes Manhattan, the Bronx, Westchester County, Rockland County, Orange County, Sullivan County, Putnam County and Dutchess County.  This means that, with regard to each count, you must decide whether the crime charged in a particular count or any act committed to further or promote the crime, occurred within the Southern District of New York.  In this connection, I instruct you that all of Manhattan, the Bronx, Westchester County, Rockland County, Orange County, Sullivan County, Putnam County and Dutchess County are in the Southern District of New York.

I should note that on this issue — and this issue alone — the Government need not prove venue beyond a reasonable doubt, but only by a mere preponderance of the evidence.  Thus, the Government has satisfied its venue obligations if you conclude that it is more likely than not that the crime charged or any act in furtherance of the crime you are considering for a particular count occurred in the Southern District of New York.

If you find that the Government has failed to prove this venue requirement by a preponderance of the evidence, then

62

you must acquit the defendant of the charge.

Adapted from the charge of the Honorable
Charles S. Haight, Jr. in United States v.
Rogers, 90 Cr. 377 (CSH) (S.D.N.Y. 1991)
(wire fraud), and from Sand, et al., Modern
Federal Jury Instructions, Instr. 3-11; see
18 U.S.C. § 3237 (general venue provision for
offenses committed in more than one
district).  See also United States v.
Naranjo, 14 F.3d 145, 147 (2d Cir. 1994)
("[P]hone calls from one district into
another can establish venue in the latter
district so long as they further the ends of
the conspiracy."); United States v. Gonzalez,
922 F.2d 1044, 1054-55 (2d Cir. 1991)
(affirming that venue is governed by a
preponderance standard).

REQUEST NO. 30

## Defendant's Right Not To Testify
(If requested by the defendant)

The defendant did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove a defendant guilty beyond a reasonable doubt.  That burden remains with the Government throughout the entire trial and never shifts to the defendant.  A defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that the defendant did not testify.  No adverse inference against the defendant may be drawn by you because he/they did not take the witness stand.  You may not consider this against the defendant in any way in your deliberations in the jury room.

> Sand, et al., Modern Federal Jury
> Instructions, Instr. 5-21.

64

## REQUEST NO. 31

### Admission of Defendant

There has been evidence that the defendant made certain statements in which the government claims he admitted certain facts charged in the indictment.

In deciding what weight to give the defendant's statements, you should first examine with great care whether each statement was made and whether, in fact, it was voluntarily and understandingly made. I instruct you that you are to give the statement such weight as you feel they deserve in light of all the evidence.

Sand, et al., Modern Federal Jury
Instructions, Instr. 5-19.

REQUEST NO. 32

Character Testimony
(If Applicable)

During the course of this trial, there has been testimony that defendant HURGENES PIGNARD has a reputation for [insert character trait testified to].  [There has also been testimony to the contrary].

Along with all the other evidence you have heard, you may take into consideration what you believe about the defendant's honesty and truthfulness when you decide whether the Government has proven, beyond a reasonable doubt, that he committed the crime charged.

> Adapted from the charge in United States v. Pujana-Mena, 949 F.2d 24, 27-31 (2d Cir. 1991) (specifically approving charge).
>
> A defendant is not entitled to a charge that character evidence "standing alone" is enough for acquittal.  See United States v. Pujana-Mena, supra, 949 F.2d at 27-31 (strongly criticizing such charges as "potentially misleading and confusing").  The Second Circuit noted that, "it might be helpful in some cases to instruct the jury as to the purpose or purposes for which [character evidence] is admitted.  Character evidence is admissible principally to show that, because of his or her good reputation, the defendant is less likely to have committed the charged crime.  In cases where the defendant testifies, character evidence may also be used by the jury to help it determine whether the defendant was truthful on the stand." Id. at 30 (citations omitted).

66

<u>REQUEST NO. 33</u>

<u>Limiting Instruction -- Prior Act Evidence</u>

You will recall that some evidence introduced by the Government was received for a limited purpose.  Specifically, you heard testimony that the defendant participated in the armed robbery of RIA Financial Services in the Bronx, New York on December 12, 2004.

This testimony was admitted to show how the relationship between the parties developed or to show how a mutual trust between the parties developed.  You may not consider it as evidence that the defendants are of bad character or have a propensity to commit crimes.

REQUEST NO. 34

Preparation Of Witnesses

You have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he will be questioned about, focus on those subjects and have the opportunity to review relevant exhibits before being questioned about them.  Such consultation helps conserve your time and the Court's time.  In fact, it would be unusual for a lawyer to call a witness without such consultation.

Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

> Charge of Hon. Michael B. Mukasey in United
> States v. Abdul Latif Abdul Salam, 98 Cr. 208
> (MBM) (S.D.N.Y. 1999).

68

REQUEST NO. 35

Persons Not On Trial

You may not draw any inference, favorable or unfavorable, from the fact that any person in addition to the defendant is not on trial here. You also may not speculate as to the reasons why other persons are not on trial. Those matters are wholly outside your concern and have no bearing on your function as jurors.

> Adapted from Judge Werker's charge in United States v. Barnes, S 77 Cr. 190 (S.D.N.Y. Nov. 29, 1977).

## REQUEST NO. 36

### Investigative Techniques

You have heard reference, in the arguments of defense counsel in this case, to the fact that certain investigative techniques were not used by law enforcement authorities. There is no legal requirement that the Government prove its case through any particular means. While you are to carefully consider the evidence presented by the Government, you need not speculate as to why they used the techniques they did, or why they did not use other techniques. The Government is not on trial, and law enforcement techniques are not your concern.

Your concern is to determine whether or not, based on the evidence or lack of evidence, the guilt of the defendant has been proven beyond a reasonable doubt.

> Adapted from the charge of Judge Pierre N. Leval in United States v. Mucciante, 91 Cr. 403 (PNL) (S.D.N.Y. 1992), and from the charge of Judge John F. Keenan in United States v. Medina, 91 Cr. 894 (JFK) (S.D.N.Y. 1992).

> See also United States v. Regan, 103 F.3d 1072 (2d Cir. 1997); United States v. Rosado, 728 F.2d 89 (2d Cir. 1984).

REQUEST NO. 37

Uncalled Witnesses — Equally Available

You have heard the names of certain people during the course of the trial who did not testify.  I instruct you that each party had an equal opportunity, or lack of opportunity, to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

> Adapted from Sand, et al., Modern Federal Jury Instructions, Instr. 6-7.  See United States v. Super, 492 F.2d 319, 323 (2d Cir. 1974) (proper to instruct jury that no inference should be drawn from the absence of a witness who was equally unavailable to both sides); accord United States v. Brown, 511 F.2d 920, 925 (2d Cir. 1975).

71

REQUEST NO. 38

Expert Testimony
(If applicable)

You have heard testimony from what we call expert witnesses, such as [identify type of expert].  Expert witnesses are witnesses who, by education or experience, have acquired learning in a science or a specialized area of knowledge.  Such witnesses are permitted to give their opinions as to relevant matters in which they profess to be experts and give their reasons for their opinions.  Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

Your role in judging credibility applies to experts as well as to other witnesses.  You should consider the expert opinions that were received in evidence in this case and give them as much or as little weight as you think they deserve.  If you should decide that the opinion of an expert was not based on sufficient education, experience, or data, or if you should conclude that the trustworthiness or credibility of an expert is questionable for any reason, or if the opinion of the expert was outweighed, in your judgment, by other evidence in the case, then you might disregard the opinion of the expert entirely or in part.

72

On the other hand, if you find the opinion of an expert is based on sufficient data, education, and experience, and the other evidence does not give you reason to doubt his or her conclusions, you would be justified in placing great reliance on the expert's testimony.

> Adapted from the charge of Judge Pierre N. Leval in United States v. Mucciante, 91 Cr. 403 (PNL) (S.D.N.Y. 1992), and from the charge of Judge Michael B. Mukasey in United States v. Mensah, 91 Cr. 705 (MBM) (S.D.N.Y. 1991).

REQUEST NO. 39

Accomplice Testimony

You have heard from three witnesses -- Jamel Bussey,
Eldon Daly and Byron Lindsay -- who testified that they were
actually involved in planning and carrying out the crimes
charged in the Indictment.  There has been a great deal said
about these accomplice witnesses in the summations of counsel
about whether you should believe them.

Experience will tell you that the Government
frequently must rely on the testimony of witnesses who admit to
participating in the alleged crimes at issue.  Often times it is
necessary.  The Government must take its witnesses as it finds
them and frequently must use such testimony in a criminal
prosecution, because otherwise it would be difficult or
impossible to detect and prosecute wrongdoers.  It argues that
only people who themselves take part in criminal activity have
the knowledge required to show criminal behavior by others.

The testimony of such accomplices is properly
considered by the jury.  If accomplices were not used, there
would be many cases in which a conviction should be had, but in
which a conviction would be unobtainable.

For these very reasons, the law allows the use of
accomplice testimony.  Indeed, it is the law in federal courts
that the testimony of an accomplice may be enough in itself for

74

conviction, if the jury believes that the testimony establishes guilt beyond a reasonable doubt.

However, because of the possible interest an accomplice may have in testifying, an accomplice's testimony should be scrutinized with special care and caution.  The fact that a witness is an accomplice can be considered by you as bearing upon his or her credibility.  However, it is not true that, simply because a person has admitted participating in one or more crimes, he or she is incapable of giving a truthful version of what happened.

Like the testimony of any other witness, accomplice witness testimony should be given such weight as it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor and candor, the strength and accuracy of his or her recollection, his or her background, and the extent to which his or her testimony is or is not corroborated by other evidence in the case.

You heard testimony about an agreement between the Government and the witnesses.  I caution you that it is no concern of yours why the Government made an agreement with a witness.  Your sole concern is whether a witness has given truthful testimony here in this courtroom before you.

In evaluating the testimony of accomplice witnesses, you should ask yourselves whether these accomplices would

benefit more by lying, or by telling the truth. Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely? Or did they believe that their interests would be best served by testifying truthfully? If you believe that one of the witnesses was motivated by hopes of personal gain, was the motivation one that would cause him or her to lie, or was it one that would cause him or her to tell the truth? Did this motivation color his or her testimony?

If you find that the testimony was false, you should reject it. However, if, after a cautious and careful examination of an accomplice witness's testimony and demeanor on the witness stand, you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.

As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion. Even if you find that a witness testified falsely in one part, you still may accept his or her testimony in other parts, or you may disregard all of it. That is a determination entirely for you.

> Adapted from the charge approved in United States v. Projansky, 465 F.2d 123, 136-37 n.25 (2d Cir.), cert. denied, 409 U.S. 1006 (1972), from the charge of Judge John F. Keenan in United States v. Carrero, 91 Cr.

76

365 (S.D.N.Y. 1991), and from Sand, <u>Modern Federal Jury Instructions</u>, Instr. 7-5.  <u>See United States</u> v. <u>Gleason</u>, 616 F.2d 2, 15 (2d Cir. 1979) ("Where the court points out that testimony of certain types of witnesses may be suspect and should therefore be scrutinized and weighed with care, such as that of accomplices or coconspirators . . . it must also direct the jury's attention to the fact that it may well find these witnesses to be truthful, in whole or in part." (citations omitted)), <u>cert.</u> <u>denied</u>, 444 U.S. 1082 (1980); <u>United States</u> v. <u>Cheung Kin Ping</u>, 555 F.2d 1069, 1073 (2d Cir. 1977).  <u>See</u> <u>also</u> <u>United States</u> v. <u>Swiderski</u>, 539 F.2d 854, 860 (2d Cir. 1976) (can be reversible error not to give accomplice witness charge if requested by defense).

REQUEST NO. 40

## Redaction Of Evidentiary Items
### (If applicable)

We have, among the exhibits received in evidence, some documents that are redacted. "Redacted" means that part of the document was taken out. You are to concern yourself only with the part of the item that has been admitted into evidence. You should not consider any possible reason why the other part of it has been deleted.

### REQUEST NO. 41

#### Direct And Circumstantial Evidence

I am now going to say a few words on the subject of direct and circumstantial evidence. There are two types of evidence that you properly may use in deciding whether or not the defendant is guilty of a particular crime with which he is charged.

One type of evidence is called direct evidence. Direct evidence of a fact in issue is presented when a witness testifies to that fact based on what he or she personally saw, heard or observed. In other words, when a witness testifies about a fact in issue which is known of the witness's own knowledge -- by virtue of what he or she sees, feels, touches or hears -- that is called direct evidence of that fact.

The second type of evidence is circumstantial evidence. Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts. There is a simple example of circumstantial evidence that is often used:

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day outdoors. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella that was dripping wet. Somebody else then walked in

79

with a raincoat that also was dripping wet.

Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining, so you have no direct evidence of that fact. But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it has been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from an established fact the existence or the nonexistence of some other fact.

I have spoken to you of inferences to be drawn from the evidence. This is what the law means when it speaks of inferring one fact from another. An inference is the deduction or conclusion that reason and common sense prompt a reasonable mind to draw from facts that have been proven by the evidence. Not all logically possible conclusions are legitimate or fair inferences. Only those inferences to which the mind is reasonably led or directed are fair inferences from direct or circumstantial evidence in the case. Whether or not to draw a particular inference is of course a matter exclusively for you, as are all determinations of fact.

Many material facts, such as state of mind, are rarely susceptible of proof by direct evidence. Usually such facts are established by circumstantial evidence and the reasonable

80

inferences you draw.  Circumstantial evidence may be given as much weight as direct evidence.  The law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a defendant of a particular charge, the jury must be satisfied of the defendant's guilt beyond a reasonable doubt, based on all of the evidence in the case.

REQUEST NO. 42

Variance In Dates

As we have proceeded through the Indictment, you have noticed that it refers to various dates.  I instruct you that it does not matter if a specific event is alleged to have occurred on or about a certain date or month but the testimony indicates that in fact it was a different date or month.  The law requires only a substantial similarity between the dates and months alleged in the Indictment and the dates and months established by the evidence.

> Adapted from the charged of Judge Edward Weinfeld in United States v. Della Rocca, 72 Cr. 217 (S.D.N.Y. 1972), and from the charge of Judge Charles Metzner in United States v. Koss, aff'd, 506 F.2d 1103 (2d Cir. 1974), cert. denied, 420 U.S. 977 (1975).

REQUEST NO. 43

Stipulations
(If applicable)

In this case you have heard evidence in the form of stipulations.

A stipulation of testimony is an agreement among the parties that, if called, a witness would have given certain testimony. You must accept as true the fact that the witness would have given the testimony. However, it is for you to determine the effect to be given that testimony.

You have also heard evidence in the form of stipulations that contain facts that were agreed to be true. In such cases, you must accept those facts as true.

Adapted from the charge of Judge Pierre N. Leval in United States v. Mucciante, 91 Cr. 403 (S.D.N.Y. 1992), and from Sand, et al., Modern Federal Jury Instructions, Instrs. 5-6, 5-7.

Dated:    New York, New York
          April 12, 2007

                    Respectfully submitted,

                    MICHAEL J. GARCIA
                    United States Attorney for the
                    Southern District of New York

          By:    _____
                 JOHN P. COLLINS, JR./CYNTHIA KEEFFE DUNNE
                 Assistant United States Attorneys
                 (914) 993-1919/1913

83

## CERTIFICATE OF SERVICE

JOHN P. COLLINS, JR. deposes and says that he is employed in the Office of the United States Attorney for the Southern District of New York.

That on April 12, 2007, he served a copy of the attached Government's Proposed Requests To Charge via Federal Express on

> William A. Gerard, Esq.
> 71 Woods Road
> Palisades, NY 10964

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. Section 1746.


Dated:  New York, New York
        April 12, 2007


_____
JOHN P. COLLINS, JR.

84