**WILLIAM A. GERARD, ESQ.**
Phone (845) 365-3121
Fax (845) 365-4036

RECEIVED
APR 16 2007
CHAMBERS OF
COLLEEN McMAHON

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

April 15, 2007

Hon. Colleen McMahon
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, N.Y. 10601

Re:  U.S. v HURGENS PIGNARD
     Superseding Indictment No.: S1 06 Cr. 718 (CM)

Dear Judge McMahon:

This letter is written to register my continuing objection to the pattern of incomplete, late, and deceptive disclosure that is ongoing in this case.

As you know, I came into this case on April 2, 2007, and before that, I reviewed all of the discovery material provided to the defendant's prior attorney, Theodore S. Green, Esq. Mr. Green is an excellent attorney he previously served a thorough discovery demand seeking all the usual material, including all exculpatory information.

Since I have taken over the defense, the Government has delivered a continuous stream of material, including paper discovery, photographs and video images, which I have been scrambling to properly review, while at the same time trying to prepare a defense. This is not simply a case where the incoming attorney is suffering a natural disadvantage having come into the case at a late stage, because the material that is being dumped on the defense at the very last minute is material that the Government had in its possession all along, but apparently withheld until this point.

Concerning the issue of exculpatory material, I have the following complaints:

1



1. The Government is relying on a theory that the Spring Valley incident on 2/3/05 was an attempted bank robbery that went wrong when the masked bandits went to the wrong door and became involved in a struggle with persons they did not expect to encounter. Now, at the last minute, the Government has finally turned over the underlying Spring Valley police records (still heavily redacted), that show that the masked bandits specifically asked to be taken to the "landlord's" door, where they forced the bank manager to attempt entry. These records further show that when the door was opened, the bandits rushed in, apparently yelling something like "where's the money."

In addition, these records show that after the incident, one of the apartment occupants (Quincy Lee), was overheard by a still un-named EMS worker asking the other hysterical occupant (Suzy Dumel), whether she "got the teddy bear out" to which she calmly replied "Its ok, I got the coat or coke out."

Finally, as the Court is aware, the Government just disclosed on April 13, 2007, that Quincy Lee has a prior YO disposition for possession of heroin, and was apparently a fugitive from justice from 1992 to 2001.

It is clear that this information raises serious questions about the Government's theory, strongly suggesting that this crime was not a bank robbery as the Government claims, but instead was a home invasion robbery of a drug dealer. It is astounding to me that the Government has withheld this information throughout the case, only divulging it in a disjointed, piecemeal fashion on the very eve of trial. Even when disclosing this information, the Government has failed to supply the name and address of the EMS worker that gave the statement to the police, making it impossible for me to unearth this information and develop it while making trial preparations.

As a result of the late disclosure of this significant information, I am at a distinct disadvantage, and I cannot make effective use of this material at trial. The only remedy I can imagine at this point is to make the Government produce this EMS witness in court, so that I may use him if I need to. In addition, the Government should supply un-redacted copies of the Spring Valley Police documents, and enter a stipulation allowing these documents in evidence concerning the underlying facts, if necessary.

2. On April 10, 2007, I received a copy of a statement of Alex Dennis, made on 2/23/06, which contains exculpatory information, which is long overdue.

Mr. Denis is a person who was falsely implicated by cooperator, Byron Lindsay, in the Spring Valley attempt on 2/3/05, and in the Dave's Checking robbery of 2/22/05. Ultimately, Mr. Lindsay admitted the falsity of some of his accusations (that issue is further addressed as item #3 below), and also admitted that the real accomplice in the Spring Valley attempt was cooperator, Eldon Daly. Of significance, Mr. Lindsay has never implicated Mr. Daly in the Dave's Checking Robbery, and Mr. Daly has never admitted to or been charged with that crime.

The Denis statement of 2/23/06 indicates that on the day of the successful Dave's Checking robbery (2/22/05), Mr. Denis followed Richard Regis, Byron Lindsay and "Dread" (now known to be Eldon Daly), from Nyack, N.Y. to a shopping center in Yonkers, where he waited until the three returned after the robbery in a red Nisson Sentra. Of further note is the fact that Mr. Daly himself, in a proffer on May 11, 2006, admitted that on 2/3/05 during the Spring Valley attempted robbery, he drove a red car which he had rented with his Washington Mutual credit card from a place called "Car Dial" on Ocean Ave. in Brooklyn. Interestingly, Mr. Daly explained that "it took a while to get the car back and he incurred late fees."

This information is significant, since the Dave's Checking robbery took place only 19 days after the Spring Valley attempt on 2/3/05, at a time when Mr. Daly may have still had the red rental car (the car described in the Alex Denis statement).

First, it is clear that this information should have been supplied to the defendant long ago, so that his prior attorney could have investigated the issue of Daly's involvement in the Dave's Checking robbery and his use of the red car in both the Dave's checking robbery and the Spring Valley attempt. At this stage, I am unable to do such an investigation. In addition, the Government has obviously had a year to check out Daly's story about his rental and return of a red car with his Washington Mutual credit card, yet they have given me nothing concerning the results of their investigation.

3

The ongoing deliberate concealment of this information is an outrage, considering the life sentence that the defendant faces, and at this point, I am without a realistic remedy.

In addition, since learning of the Denis statement, I have tried without success to contact Mr. Denis, and therefore, I may ask that his statement be admitted by stipulation as an exception to the hearsay rule.

3. Byron Lindsay is a cooperator who has been involved in at least 6 proffers between 10/19/05 and 3/21/06, at least one of them after he took his plea on 2/17/06. I have received some of these records over the last ten days, and it is apparent that Mr. Lindsay concealed significant information from the Government, even after his plea. Specifically, in none of these proffers did Mr. Lindsay ever admit that Mr. Daly was the person he named as "Dread" in his description of the participants of various robberies, and it appears that the only way that the Government found out that "Dread" was really Mr. Daly, was when they found Mr. Daly on 5/5/06 as a result of information provided by cooperator, Bussey, on 5/4/06.

Only very recently, in a document labeled 3503-Z (copy enclosed), has the Government admitted in writing that Mr. Lindsay persistently and repeatedly lied up until some unspecified time about the involvement of Daly in these matters. Of note is the fact that this document (3503-Z) does not indicate when Mr. Lindsay "came forward" with these revelations, or when he was later "confronted by federal agents" and admitted to continuing to lie even after he had initially come forward.

It is interesting that this document (3503-Z) is undated and unsigned by any human being, and it does not contain information critical to its effective use by the defense. For instance, when did the various admissions occur and under what circumstances ? Who was present when the confrontation took place and where are the reports and notes that should have been created when these significant revelations were made by the chief cooperator?

Over the last ten days as I received the records of the various proffers concerning the three cooperators (all of which contain long overdue significant

4

exculpatory information), I noticed that AUSA John Collins was present at each and every session. It therefore occurred to me to consider requesting a trial subpoena for Mr. Collins, because I anticipate having to impeach these witnesses concerning many of their past and present lies in this matter. After receiving 3503-Z, I am now requesting that this Court issue such a subpoena, so that Mr. Collins will be available as a defense witness to be used for impeachment purposes in this case. While this may be an unusual request, I believe that the defendant is entitled to select which witnesses he chooses to call for impeachment purposes, and Mr. Collins has made himself a potential witness by the nature and extent of his prior involvement.

This case is unusual in the sense that the only evidence that purportedly connects the defendant directly to any of these crimes comes from admitted liars, necessarily making impeachment a critical issue at trial. This is not a case involving only a few lies, but instead we are dealing with dozens and dozens of lies (by my count well over 100) over a period of almost two years by the three cooperators. Despite being repeatedly caught in these lies by investigators/prosecutors, even after pleading guilty, the cooperators are still being relied on to testify against Mr. Pignard and inexplicably, their cooperation agreements have not been repudiated by the Government.

It is my understanding that the rules of impeachment allow me to confront these witnesses with their previous lies, and even if they admit them, I am entitled to call any witness of my choosing to complete the impeachment. F.R.E. § 613 (b); Gordon Et Al. v U.S., 344 U.S. 414 (1952), 73 S. Ct. 369, 97 L. Ed. 447, 1953 U.S. LEXIS 2425.

At this point, I wish to preserve the defendant's constitutional right to confront, cross examine and impeach the witnesses using Mr. Collins, and it is hereby requested that this Court order the Government to provide me with the information missing from item # 3503-Z, and issue a defense subpoena for Mr. Collins.

4. The Giglio Material recently provided by the Government contained references to a person named Mozene Beauvais, who is claimed to be the mastermind of the Loch Sheldrake crime by the cooperating witnesses. According to the cooperators, he backed out before the crime, because he found out that a white woman was involved.

5

Fortunately, I was able to contact Mr. Beauvais and I learned from him that he was picked up by Detectives Goldrick and Toth of the Orangetown Police at an early stage of the investigation, and was taken to the Orangetown police station for questioning. There, with FBI agents present, he was confronted with these accusations, which he categorically denied. When he did so, Detective Goldrick cursed him and told him he would see to it that he did seven years in jail unless he fessed up. After the interview, he was released, and he has never been charged in connection with this case.



Although it appears that Mr. Beauvais gave the Government a statement indicating that the cooperators were lying about his involvement, the Government has failed to provide the defense with this information, or with the report of this interview. It is submitted that information that these cooperators falsely accused Mr. Beauvais is extremely exculpatory, considering that they also falsely accused Alex Denis of involvement. Clearly, having this information in a timely fashion could make all the difference in case where the defense is that the cooperators are lying about innocent people in order to avoid receiving life sentences. At the very least, the Government should be directed to provide the withheld information and documentation.

5. In this case the Government is relying on a theory that the defendant used a 1993 gray Mercury Villager Minivan for the Loch Sheldrake attempted bank robbery on April 20, 2005, and they apparently intend to introduce evidence to show Mr. Pignard's ownership or use of such vehicle during that period. Even a chimpanzee would recognize that evidence specifically contradicting the use of this type of vehicle in the crime would be considered exculpatory, yet it appears that the Government has deliberately withheld this specific evidence until the very eve of trial.

Yesterday, by overnight mail, I received from the Government a package containing over 200 pages of documents in which was buried a one page supporting deposition of a man named Gary Bowers (no address), who states that at the very time of the reported crime (3:00 p.m.), he was passing the victim's residence and observed a "foreign model, smaller, silver sport utility vehicle" pulling rapidly out of the driveway. It is noteworthy that the Government did provide me some of the Loch Sheldrake police

6

reports earlier last week, but Mr. Bowers' supporting deposition was omitted from that delivery, and the police report itself was redacted to delete all reference to his statement.

In a trial where the government will rely on proof that a specific type of vehicle belonging to the defendant was used as the getaway car at a crime scene, it certainly would have been nice if the defense had access to an official police report identifying a witness who has made particular, specific, objective observations that contradict this theory. Possessed of such information, perhaps the defendant might have even considered contacting such a witness and conducting an interview to determine whether he could be available to be called as a defense witness at trial.

Now, one day before jury selection, it is troubling that this sort of miscue has occurred and again, the defendant is without a meaningful remedy, unless the Government can produce the witness that they have concealed up to this point.

Conclusion

The matters raised herein are significant, and the available remedies are of limited value, considering this late stage of the proceedings. It is particularly disturbing that this omitted information was not specifically identified to me and instead, I had to find it buried among the many hundreds of pages of Giglio and 3500 and discovery material in the course of preparing for trial. If I had not devoted well over 100 hours to reviewing this material over the last ten days, I would not have been able to find these needles in this haystack. In addition, having to devote this sort of time and effort to review and absorb this volume of evidence at this stage, has severely limited my ability to prepare for the other aspects of this case, like preparing a defense.

It is easy for the Government to say that they have now provided me with the withheld witness information concerning the unknown EMS worker and Alex Denis and Gary Bowers, and I can now do what is required to locate, contact, interview, evaluate, etc., however, this is out of the question, considering that I am a sole practitioner and we will be engaged in trial proceedings from 9:00 a.m. to 6:00 p.m. until the conclusion of trial. During this time, my attention will necessarily be focused on testimony during the day, and preparation at night, and requiring me to perform

additional tasks now assigned to me by the Government is fundamentally unfair and deprives the defendant of due process and the assistance of counsel at a critical stage of the proceedings.

I have been practicing criminal defense for twenty-four years in the State Courts and I have seen some remarkable things, but I am frankly stunned by the actions of the Government in this matter. Based upon what can only be viewed as deliberate suppression of exculpatory evidence, it is submitted that these charges should be dismissed, or in the alternative, the defendant should be ROR'd, and a two-month adjournment should be granted to the defense.

I regret making this application, and I know that it is unwelcome at this point, however, the conduct of the Government has clearly placed me in a position where I have an obligation to make the request, or suffer a claim of malpractice if I simply proceed silently to trial.

Thank you for your consideration of this matter.

Very truly yours,

William A. Gerard (5062)

John Collins, Esq.
Cynthia Dunne, Esq.
Assistant U.S. Attorneys

PLEASE REPLY TO THE FOLLOWING ADDRESS:
71 Woods Rd., P.O. Box 717, Palisades, N.Y. 10964



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*United States Courthouse*
*300 Quarropas Street*
*New York, New York 10601*

April 6, 2007

3503-Z

Re:   **United States v. Hurgenes Pignard**
      **S 06 Cr. 718 (CM)**

### TRIAL WITNESS BYRON LINDSAY

3503-R is the post-arrest statement that Lindsay made at the time when he and Richard Regis were arrested for the attempted robbery of the Bank of New York in New Hyde Park, New York. In that statement, although Lindsay admits to his own role in the attempted robbery, he falsely states that they were assisted by "Sean Gifford," rather than the person who actually assisted him and Regis in the robbery, because that third person had managed to escape without having been caught by the police. Lindsay does not know anyone by the name of Sean Gifford. In addition, in 3503-R, Lindsay told the police that he and Regis opened the Bank doors with a lock pick, when in fact, Regis had a key to the bank door. Most of the actions attributable to Gifford are the actions of either Lindsay, Regis or the third person who assisted them in that robbery. When arrested on federal charges Lindsay admitted to the falsity of his prior statement to the police.

In addition to acts detailed in the cooperation agreement, Lindsay also participated in an attempted robbery of a scrap yard, along with Regis and Bussey. They staked out the premises and abandoned their plan and did not commit a robbery.

When Lindsay originally proffered to the Government, he lied to protect the identities of Bussey, Daly and Hall. He told agents that he did not know their true identities and identified Bussey and Daly only by the nicknames "Dwalli" (Bussey) and "Dred" (Daly). Lindsay later came forward and told agents that he could identify all three individuals and told agents that he had misled them about his relationship with the three. Lindsay continued the deception, however, by

telling federal agents that an individual known to him as "Lex" (who had participated in the planning of the Spring Valley robbery) drove the car in the Spring Valley attempted robbery, when in fact Daly drove the car. Lindsay admitted to this lie, to protect Daly, when confronted by federal agents.

**WILLIAM A. GERARD, ESQ**
71 Woods Road, P.O. Box 717
Palisades, New York 10964
Phone (845) 365-3121 ∞ Fax # (845) 365-4036

## CONFIDENTIAL FAX COVER SHEET

**DATE:** April 15, 2007

**TO:** Hon. Colleen McMahon, United States District Court, SDNY

**FAX #:** White Plains 914-390-4152
NYC 212-805-6326

**RE:** **U.S. v HURGENS PIGNARD**
Superseding Indictment No.: S1 06 Cr. 718 (CM)

Attached please find __11__ pages (including this one). Please contact me at (845) 365-3121 if you do not receive the correct amount of pages.

Message:

See letter faxed herewith.

Thank you for your courtesy and assistance in this matter.

Very truly yours,

*William A. Gerard*
William A. Gerard

**CC.:** John Collins, Esq.
U.S. Attorney
Fax No. 914-993-1980