UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

   -against-

HURGENS PIGNARD,

**Superseding Indictment**
**No. SI 06 Cr. 718 (CM)**

                        Defendant.
_____

# SENTENCING MEMORANDUM

Dated: Palisades, N.Y.
       September 30, 2007

                                    _____
                                    William A. Gerard (5062)
                                    Attorney for defendant
                                    HURGENS PIGNARD
                                    71 Woods Rd., Box 717
                                    Palisades, N.Y. 10964
                                    Phone 845-365-3121
                                    Fax 845-365-3121

# TABLE OF CONTENTS

| | |
|---|---|
| **Table of Contents** | 1 |
| **Preliminary Statement** | 3 |
| **Presentence Investigation Report** | 3 |
|     **The Offense** | 3 |
|         Charges | 3 |
|         Convictions | 4 |
|         Other Dispositions | 4 |
|         The Offense Conduct | 4 |
|         Victim Impact | 8 |
|         Offense Level Computation | 9 |
|     **Defendant's Criminal History** | 11 |
|         Adult Criminal Convictions | 11 |
|         Criminal History Computation | 13 |
|         Other Arrests | 13 |
|     **Offender Characteristics** | 13 |
|         Personal and Family Data | 13 |

    Substance Abuse    14

**Sentencing Options**    14

**Factors to Be Considered in Imposing Sentence**    14

    Prospect of Successful Drug Treatment    15

    Letters Submitted on behalf of Defendant    15

**Conclusion**    15

**PRELIMINARY STATEMENT**

This memorandum is submitted on behalf of the defendant, HURGENS PIGNARD, to provide the Court with information relevant to its determination of an appropriate sentence.

**PRESENTENCE INVESTIGATION REPORT**

U.S. Probation Officer, Margaret Rivera, has submitted a Presentence Investigation Report (hereinafter "the Report") that addresses some of the relevant issues in this matter. It is understood that the Court has requested modification of the Report, which has not yet been submitted, therefore, this Memorandum will only address the information and issues presented in the Report provided thus far.

**A. The Offense**

Charges:

The defendant was tried on four of the five counts contained in the Superceding Indictment, including:

Count 1. Conspiracy to rob federally insured banks and credit unions (18 U.S.C. § 2113 (a) and (d));

Count 2. Att. armed robbery of the federally insured Charter One Bank in Spring Valley, N.Y. on 2/3/05 (18 U.S.C. § 2113 (a) and (d) **(incorrectly described as a robbery on p.3 of the Report)**;

Count 3. Att. robbery of the federally insured First National Bank of Jeffersonville, Loch Sheldrake, N.Y. on 4/20/05 (18 U.S.C. § 2113 (a) & 2);

3

<u>Count 4.</u> Possession and use of a firearm on 4/20/05, in connection with the attempted robbery of the First National Bank of Jeffersonville in Loch Sheldrake, N.Y. (18 U.S.C. § 924 (c) (1) (A) (1) & 2).

<u>Convictions:</u>

The Report correctly reports that HURGENS PIGNARD was convicted of Counts 1 and 3, acquitted of Count four, and the jury was unable to agree on Count 2, resulting in a mistrial.

The Report correctly states that HURGENS PIGNARD and the Government have entered a plea agreement concerning Count 5 of the Superceding Indictment which charges cocaine possession on 8/24/06 (21 U.S.C. U.S.C. § 812 841 (a) (1), and 841 (b) (1) (C)). Pursuant to the agreement, HURGENS PIGNARD's stipulated Sentencing Guidelines range is 8 to 14 months.

<u>Other Dispositions:</u>

Pursuant to the plea agreement concerning Count 5 of the Superceding Indictment, the Government has agreed not to prosecute HURGENS PIGNARD on Count 2, on which the jury was unable to agree (attempted armed robbery of the federally insured Charter One Bank in Spring Valley, N.Y. on 2/3/05,).

<u>The Offense Conduct:</u>

The Court is familiar with the trial evidence, however, for the record, this Memorandum will briefly address the factual issues raised by the Report.

The Report contains a detailed description of the purported facts of this case, and this memorandum will only address those portions that are inaccurate, or inconsistent with the evidence in the record.

Paragraph 18 of the Report indicates that HURGENS PIGNARD was "later identified" as one of the men who fled the vicinity of the loch Sheldrake victim's residence. It should be understood that the only people who identified HURGENS PIGNARD as the driver of the vehicle that picked up the fleeing men were cooperators, Byron Lindsay, Eldon Daly and Jamal Bussy, and there was no other evidence of any kind to place him at that location or corroborate their testimony in any way.

Paragraphs 23 through 26 of the Report suggest that Richard Regis gave a statement to the New York State Police after his arrest for robbery in New Hyde Park, N.Y. on 6/16/05, in which he provided numerous details about the personal involvement of HURGENS PIGNARD in the Loch Sheldrake robbery.

This account is untrue, and instead, documents provided by the Government in discovery show that after his arrest, Richard Regis described committing the Loch Sheldrake robbery with Byron Lindsay and a person named "Dewel." The Narrative Report of Inv. Thomas Gibbons (Exhibit "1"), and the written statement of Richard Regis (Exhibit "2"), confirm that HURGENS PIGNARD was not mentioned by Richard Regis.

Paragraphs 29 and 30 of the Report describe the purported involvement of HURGENS PIGNARD in the 12/12/04 robbery of RAI Financial Services in the

5

Bronx, however, the only person who identified HURGENS PIGNARD as being involved was cooperator, Byron Lindsay, and there was no other evidence of any kind to confirm his participation or corroborate his testimony in any way.

Byron Lindsay was shown to be witness of dubious credibility, and the trial evidence concerning the RAI robbery showed by a preponderance of the evidence that it was he, and not PIGNARD, who terrorized the victim by barking orders at her in poor Spanish. At trial, Jeoconda Regal testified that her handler gave her orders in "bad high school Spanish," both in the car and inside the RAI office, and the Government introduced a video-tape showing that the only person who entered the office with Ms. Regal was Byron Lindsay. It could only have been Lindsay (who admitted taking Spanish in high school), who was giving her these orders while inside the office, therefore his testimony that PIGNARD was needed to speak Spanish to the victim is not consistent with the events that took place.

In addition, the Report confirms that HURGENS PIGNARD's Mother and Wife are Dominican, and that he spent substantial time in that country until moving permanently to Nyack at the age of 13 (see the Report, pars. 125 and 128). He also lived in the Dominican Republic for three years while pursuing a medical degree in the early 1990's (see the Report, par. 133).

Finally, if necessary, HURGENS PIGNARD can show the sentencing Court that he is a fluent Spanish speaker, who speaks in an identifiable dialect common to the Dominican Republic, and therefore, it is unlikely that he could have been

the person who was described by native Spanish speaking Jeoconda Regal as giving her orders in what sounded like "bad high school Spanish."

Paragraph 31 of the Report describes the purported involvement of HURGENS PIGNARD in the attempted robbery of the Charter One Bank in Spring Valley on 2/3/05, during which one victim was held at pellet-gunpoint and another was pistol whipped with a pellet gun.

Again, there was no evidence to connect HURGENS PIGNARD with this event, other than the questionable testimony of cooperators, Lindsay and Daly. None of the victims described any of the three robbers as being 6'2" and 220 lbs., and instead, Mr. Youssef described the person who held him at gunpoint on his knees as "a tall, skinny black male" (a description fitting Mr. Lindsay).

Mr. Daly testified that he and PIGNARD and the others met at PIGNARD's house early in the morning and all drove in one car to the Bank, where they watched the employees arrive for work in the morning, but this is contradicted by the gym records of PIGNARD and Regis, introduced by the Government (Trial Exhibits 42 and 43). These records show that Richard Regis did not go to the gym that day, but HURGENS PIGNARD entered the gym that morning at 9:04 a.m. (Exhibit "3"). The Gym manager testified that the identity of patrons is electronically and personally confirmed by gym staff, and Mr. PIGNARD usually worked out for 30-90 minutes.

7

These gym records contradict the testimony of Eldon Daly and provide a firm alibi for HURGENS PIGNARD, preventing his conviction on Count 2 at trial, and causing the Government to abandon the idea of a re-trial on that count.

Paragraph 34 of the Report describes the purported involvement of HURGENS PIGNARD in the robbery of the Palisades Federal Credit Union on 5/18/05, during which the employees were restrained with flex cuffs while two robbers stole $219,000.00.

Yet again, there was no evidence to connect HURGENS PIGNARD with this robbery, other than the doubtful testimony of cooperator, Byron Lindsay, with the support of his Cousin, Tex.

Paragraph 41 of the Report describes various personal items found in the defendant's residence when he was arrested in August, 2006 (gloves, clothing, hat, Scarface poster, etc.). It is submitted that this material should be stricken from the Report and disregarded by the Court, because it has no relation to any issue in this case. For instance, a poster of the actor, Al Pacino, who lives locally in Palisades, New York, should not result in any "enhancement" of Mr. PIGNARD's sentence.

<u>Victim Impact:</u>

Concerning the attempted robbery of the federally insured First National Bank of Jeffersonville, Loch Sheldrake, N.Y. on 4/20/05, no financial losses were suffered by the bank, and no physical injuries were suffered by any victims or participants.

8

Offense Level Computation:

At the outset it is submitted that the offense level computation should be based upon defendant's convictions under Counts 1 and 3 for his alleged involvement in the robbery of the First National Bank of Jeffersonville in Loch Sheldrake, N.Y. on 4/20/05. For the reasons already described above, there is an insufficient basis to consider the other matters in the overall calculation.

In addition, the Government successfully argued to the jury at the conclusion of the evidence that Mr. PIGNARD should be convicted under counts 1 and 3 upon his admission that he loaned his car to Richard Regis for the robbery. In the resulting verdict, PIGNARD's acquittal of gun possession in connection with Loch Sheldrake, and the jury's inability to agree on the Spring Valley incident, show that the jury gave the Government the very verdict they asked for, and the Government should not now be permitted to expand the logical scope of that verdict.

| | |
|---|---|
| Base offense level for robbery | 20 |
| Taking property from financial institution | +2 |
| Minimal role in offense | --4 |
| ADJUSTED OFFENSE LEVEL | 18 |

It is noted that the Report recommends a 5 point enhancement for possession of a firearm, however, the Court is urged to reject this invitation based on the facts of the case.

By all indications, the verdict is based upon the Government's argument that by lending his car to Regis for the robbery, HURGENS PIGNARD became a conspirator and an accomplice to that robbery. His acquittal of gun possession is further consistent with such a minimal role, while being wholly inconsistent with any conclusion that he was at the scene of the crime as claimed by all three of the cooperators. His minimal role is further supported by the fact that Mr. Bussey, although admittedly eager to earn a sentence reduction, could not identify Mr. PIGNARD in a photo array, despite his claim that he spent many hours with him during the long trip to Loch Sheldrake and back.

Under the circumstances, the jury verdict acquitting him of gun possession, and the corresponding lack of any evidence that he had knowledge of Byron Lindsay's possession of a gun in a duffel bag many miles away, make it inappropriate to enhance his sentence for possession of an item about which Mr. PIGNARD was not shown by a preponderance of proof to have had knowledge. U.S. v Booker, 543 U.S. 220 (2005) 125 S. Ct. 738; Blakely v Washington, 542 U.S. 296 (2004), 124 S. Ct. 2531; U.S. v Watts, 519 U.S. 148 (1997), 117 S. Ct. 633.

The proposed reduction of 4 points for playing a minimal role is again supported by the jury verdict finding him culpable for lending his car to Regis for the robbery.

While the preponderance of the evidence (his alleged admissions), may have convinced a jury that he loaned his car for the robbery, there was absolutely no other reliable evidence introduced to show that he had any specific knowledge of the plan or the target or the other participants, and therefore, a reduction for minimal involvement is appropriate.

According to the application notes accompanying § 3B1.2, it is intended that the reduction for minimal participation will apply infrequently, and that one's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant. U.S. v Pitre, 960 F.2d 1112 (2nd Cir, 1992).

### B. Defendant's Criminal History

The Report contains certain inaccurate or incomplete information, as addressed below.

<u>Adult Criminal Convictions:</u>

Paragraph 110 of the Report reflects a shoplifting conviction in Northvale, New Jersey in 1996, for which the Report assigns 1 point. While shoplifting is not listed as one of the minor offenses that should not be counted (see § 4B1.2 (C)(1) and 2), the facts of this offense suggest that it is not deserving of any point adjustment.

Upon information and belief, the conviction resulted from an occasion when Mr. PIGNARD purchased items in a store and the cashier did not charge him the full price when she rang up the total cost. As a

result, he and the cashier were charged with the offense and he resolved it by paying a fine. It was not an occasion where he went to the store and deliberately stole any items, and it is requested that the Court exercise its discretion when considering whether this ten-year old incident warrants a sentence enhancement that would have the effect of bumping him from a category II to category III offender.

Paragraph 113 of the Report claims to describe the circumstances of his arrest and conviction in 2003 for possession of drugs, and while the conviction and sentence information is accurate, the underlying facts are incorrectly reported.

Upon information and belief, no transaction of any kind took place involving drugs. Instead, Mr. PIGNARD was pulled over in traffic while driving his car, and when he objected to a search, he was wrestled to the ground and his car was searched, resulting in the discovery of a quantity of cocaine. The circumstances suggest that this was not a random traffic stop, and it is possible that he was targeted for this stop and search by the Rockland County Narcotics Task Force as indicated in the Report.

It is believed that this incident is the same one mistakenly included at paragraph 121 of the Report under <u>Other Arrests</u>, which states,

> The defendant's vehicle was stopped for a routine search whereupon the officers recovered a controlled substance. It was noted that Pignard became combative during this arrest.

Criminal History Computation:

| | |
|---|---|
| 03 Conviction | 1 |
| On probation during offense | 2 |
| TOTAL CRIMINAL HISTORY SCORE | 3 |
| CRIMINAL HISTORY CATEGORY | II |

Other Arrests:

At paragraphs 118 and 119 the Report list an arrest that Mr. PIGNARD claims to have no knowledge about, and which is believed to be an error in the Report.

### C. Offender Characteristics

Personal and Family Data:

While the Report indicates at paragraph 126 that Mr. PIGNARD's Father resides in Haverstraw, N.Y., it fails to mention that since April, 2007, he has been hospitalized on life support. It is requested that the additional remarks in that paragraph be disregarded as inappropriate.

Paragraph 128 concerns Mr. PIGNARD's wife and children, and again, this Court is urged to disregard the inappropriate personal comments that have no bearing on sentencing. Instead, this Court should be aware that Mr. PIGNARD

also has an adopted son who is not mentioned in the Report, and his Wife indicates that no one has contacted her to interview her for the Report.

Substance Abuse:

Paragraph 131 of the Report correctly notes that HURGENS PIGNARD has a history of substance abuse, therefore, it is requested that he be sentenced to serve any prison time at an institution that maintains a Residential Drug Treatment program run by the Bureau of Prisons

### D. Sentencing Options

Based on a total offense level of 18 and a criminal history category of II, the guidelines range for imprisonment is 30-37 months.

### E. Factors to be Considered in Imposing Sentence

Prospect of Successful Drug Treatment:

It is submitted that this Court has discretion to depart downward from the sentencing range based on the prospects of successful drug treatment during incarceration. See U.S. v Harrington, 292 U.S. App. D.C. 90 (1991), 947 F.2d 956. Certainly, the positive attitude displayed by Mr. PIGNARD throughout this process, and the evident family support with which he is blessed, all suggest the likelihood of successful drug abuse treatment in his case.

It is further submitted that the Court should consider the lengthy period of pre-trial detention, and Mr. PIGNARD's conduct and demeanor throughout this time as a basis for possible downward departure.

Letters Submitted on behalf of Defendant:

Annexed hereto are the following letters submitted in support of HURGENS PIGNARD:

1. Letter of Alexander M. De Sherbinin, dated April 28, 2007 (Exhibit "4");

2. Letter of Phara Pignard, dated September 11, 2007 (Exhibit "5");

3. Letter of Tamela Sue, dated September 12, 2007 (Exhibit "6");

4. Letter of Nikia Gousby, dated September 13, 2007 (Exhibit "7").

## CONCLUSION

Based on the factors addressed above, the Court is urged to consider a sentence of time served together with a period of probation, if at all possible under the statutes.

Dated: Palisades, New York
     September 30, 2007          Respectfully submitted,

_____
William A. Gerard (5062)
Attorney for defendant
HURGENS PIGNARD
71 Woods Rd., Box 717
Palisades, N.Y. 10964
Phone 845-365-3121
Fax 845-365-3121